No. 97-313

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 155

FARMERS ALLIANCE MUTUAL INSURANCE

COMPANY, a Kansas Insurance Corporation,

Plaintiff and Appellant,

v.

KRISTI HOLEMAN, Personal Representative of the

Estate of Gary Lee Leonard, Deceased,

Defendant and Respondent.

ORIGINAL PROCEEDING

COUNSEL OF RECORD:

For Appellant:

Robert J. Savage (argued); Habedank, Cumming, Best & Savage;

Sidney, Montana

For Respondent:


Donald D. Sommerfeld (argued); Towe, Ball, Enright,

Mackey & Sommerfeld; Billings, Montana

For Amici Curiae:

Susan P. Roy (argued) and Steven R. Brown; Garlington, Lohn

& Robinson; Missoula, Montana (for Alliance of American Insurers)


John J. Richardson (argued); Beck Law Offices; Bozeman, Montana

(for Montana Trial Lawyers)

Heard: January 6, 1998

Submitted: January 6, 1998

Decided: June 18, 1998

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

**¶1 The United States District Court for the District of Montana, Billings Division, has certified to this Court two questions, the adjudication of which the court deemed necessary for resolution of the declaratory judgment action pending before it. The United States District Court set forth the questions as follows:**

**¶2 1. The estate of Gary Lee Leonard, an insured under the Farmers Alliance**

Mutual Insurance Company policy at issue in this case, settled for policy limits of $25,000 with the driver of the underinsured motor vehicle, Darrel Storey, Jr., which struck and killed Leonard. In exchange for the money, the estate released the underinsured motor vehicle driver, his heirs, executors, administrators, agents, and assigns, and all other persons, firms or corporations liable, or who might be claimed to be liable. Under the policy at issue, Farmers Alliance is required to pay, with respect to underinsured motorist coverage, all sums the insured is legally entitled to recover as compensatory damages from the owner or driver of an underinsured motor vehicle. Does the release place the estate of Gary Lee Leonard in the position of being no longer legally entitled to recover compensatory damages from the owner or driver of the underinsured motor vehicle and thus bar the estate from recovering pursuant to the underinsured motorist provisions of the Farmers Alliance policy?

¶3 2. Can the underinsured motorist coverages and auto medical payments coverages be stacked under the Farmers Alliance policy at issue in this case, where multiple vehicles are insured under one policy where a premium is charged for coverage of each motor vehicle listed within the policy?

¶4 For the reasons discussed below, we answer the first question in the negative. We hold the critical question is whether Leonard's estate was legally entitled to recover damages from the driver of the underinsured vehicle at the time of the accident, and thus conclude the release in question does not bar Leonard's estate from seeking recovery of underinsured motorist benefits pursuant to the underinsured motorist provisions of the Farmers Alliance policy.

¶5 Because we answer question number one in the negative, we in turn address the second certified question in its entirety. For the reasons discussed below, we answer question number two in the affirmative, and conclude the underinsured motorist coverages and auto medical payments coverages may be stacked under the Farmers Alliance policy at issue in this case because the insured paid separate premiums for each insured vehicle.

## FACTUAL BACKGROUND

¶6 We take the following relevant facts from those recited by the Federal District Court in its certification order:

¶7 On or about May 31, 1991, Farmers Alliance issued an automobile insurance policy to Wade and Diana Brown, the named insureds and parents of Scott Hankel. On November 9, 1991, a Ford pickup truck insured by Farmers Alliance under the policy issued to Wade and Diana Brown, driven by Lori Watson, in which Scott Hankel and Gary Lee Leonard were passengers, was involved in a one-vehicle accident on Interstate 90, 15.6 miles west of Whitehall, Montana.

¶8 Approximately twenty minutes thereafter, a pickup driven by Darrel Storey, Jr., was traveling east on Interstate 90 when Storey lost control of the vehicle as he attempted to slow for the accident scene. The Storey vehicle skidded and struck the right rear corner of the trailer attached to the Watson pickup. The resulting collision pushed the trailer into the ditch and onto its left side. The Storey vehicle rapidly rotated. Gary Lee Leonard's coat became entangled on the hitch of the Storey vehicle which caused Leonard to be dragged under the Storey vehicle until after it went backward into a ditch on the side of the road. Leonard died as a result of the injuries he sustained.

¶9 The Storey vehicle was insured by State Farm which paid out its policy limits under the liability portion of its policy in the amount of $25,000. In exchange for the money, Leonard's estate released "Storey, his heirs, executors, administrators, agents, and assigns, and all other persons, firms or corporations liable, or who might be claimed to be liable . . . ."

¶10 Prior to signing the release, Leonard's estate made demand upon Farmers Alliance for the underinsured motorist coverage and auto medical payments coverage provided for in the Business Auto Policy of Wade and Diana Brown. Farmers refused to pay under any provision of the policy.

¶11 This action was filed by Farmers Alliance against Kristi Holeman as personal representative of the estate of Gary Lee Leonard seeking a declaration of non-coverage for claims made by the estate under the auto medical payments and underinsured motorist provisions of the insurance policy issued by Farmers Alliance. Gary Lee Leonard is an insured for purposes of underinsured motorist coverage and auto medical payments coverage under the policy at issue.

¶12 Under the policy at issue Farmers Alliance is required to pay, with respect to underinsured motorist coverage, "all sums the 'insured' is legally entitled to recover

as compensatory damages from the owner or driver of an '[underinsured] motor vehicle.'" Moreover, under the policy Farmers Alliance is required to pay, with respect to auto medical payments "reasonable expenses incurred for necessary medical and funeral services to or for an 'insured' who sustains 'bodily injury' caused by an 'accident.'"

¶13 The policy at issue also states:

> Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most [Farmers Alliance] will pay for all damages resulting from any one "accident" is the LIMIT OF INSURANCE for [UNDERINSURED] MOTORISTS COVERAGE [and AUTO MEDICAL PAYMENTS COVERAGE] shown in the Declarations.

¶14 Holeman claims Farmers Alliance is required to "stack" the underinsured motorist coverages and the auto medical payment coverages of the policy at issue to provide $300,000 of underinsured motorist coverage and $12,000 of medical payment coverage.

¶15 On summary judgment in the federal District Court, Farmers Alliance argued, in part, that because the estate of Gary Lee Leonard settled with and released the driver of the underinsured vehicle which struck Leonard, the estate is barred from seeking underinsured motorist coverage under the Farmers Alliance policy because it is no longer legally entitled to recover compensatory damages from the underinsured motorist. Farmers Alliance also argued that the policy specifically prohibits stacking.

## QUESTION 1

¶16 Does the release place the estate of Gary Lee Leonard in the position of being no longer legally entitled to recover compensatory damages from the owner or driver of the underinsured motor vehicle and thus bar the estate from recovering pursuant to the underinsured motorist provisions of the Farmers Alliance policy?

¶17 Farmers Alliance argues that, because Holeman entered into a general release

with Storey, the third-party tort-feasor in this case, she cannot recover underinsured motorist benefits pursuant to the terms of the Farmers Alliance policy. In support of its argument, Farmers Alliance preliminarily asserts that its liability to an insured for underinsurance motorist benefits is derivative of the liability of the third-party tort-feasor. Because of the derivative nature of this coverage, Farmers Alliance argues, Holeman's decision to settle with Storey and release him from liability precludes her from recovering underinsured motorist benefits.

¶18 Farmers Alliance notes that, with respect to liability for underinsured motorist benefits, its policy provides that Farmers Alliance "will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'underinsured motor vehicle.'" After Holeman settled with Storey and released him from liability, Farmers Alliance maintains, she was no longer "legally entitled to recover" damages from Storey, and was thus precluded from recovering underinsured motorist benefits pursuant to the express terms of the Farmers Alliance policy.

¶19 Farmers Alliance relies on a number of cases in which courts in other jurisdictions have interpreted similar policy language and recognized that, because underinsured coverage is derivative of the tort-feasor's liability, an insured who releases a tort-feasor, in effect releases the insurer. *Spivey v. Lowery* (N.C. Ct. App. 1994), 446 S.E.2d 835, 837 (recognizing an underinsurance motorist carrier's "liability is derivative of the tort-feasor's liability," and concluding plaintiff who released third-party tort-feasor was precluded from asserting a claim against the carrier); *Buchanan v. Buchanan* (N.C. Ct. App. 1986), 350 S.E.2d 175, 176 (holding defendant insurance company's liability for underinsured motorist benefits is derivative in nature and concluding an insured who settled with and released a third-party tort-feasor was precluded from recovering underinsured motorist benefits); *Nationwide Mut. Ins. Co. v. Nacchia* (Del. 1993), 628 A.2d 48, 52-53; *Darby v. Mathis* (Ga. Ct. App. 1994), 441 S.E.2d 905, 908.

¶20 Holeman views this coverage differently. She asserts that underinsurance coverage is not purely derivative of a third-party tort-feasor's liability, but instead arises from an insurer's contractual relationship with the insured. In support of her argument, Holeman points to the case of *Turlay v. Farmers Insurance Exchange* (Or. 1971), 488 P.2d 406, 412, in which the Oregon Supreme Court determined that Oregon's contract statute of limitations applied to an insured's action against an

insurer for uninsured motorist benefits. In so holding, the court concluded that "the liability of the insurer is based on its contract with the insured, and any claim of the insured also is governed by the contract." *Turlay*, 488 P.2d at 412. *See also Kalhar v. Transamerica Ins. Co*. (Or. Ct. App. 1994), 877 P.2d 656, 660 (recognizing that "[a] claim for uninsured motorist benefits exists solely by reason of the coverage provided by the insurance policy; an insurer's liability for the tort of another is created by contract."). Holeman thus argues the source of Farmers Alliance's liability in the present case lies not with the tort committed by Storey or with any special relationship between Farmers Alliance and Storey, but with the terms of the insurance contract itself. Because her claim arises from the insurance contract's coverage provisions, Holeman contends, the fact that she settled with Storey and agreed to release him from liability does not now prohibit her from seeking underinsured motorist benefits pursuant to the terms of the policy at issue.

¶21 Although we too recognize that underinsured motorist coverage is, to an extent, of a derivative nature, we conclude an insurer's liability for underinsured motorist benefits in any given case arises from the terms of the insurance contract, and its contractual relationship with its insured. *See, e.g., Vega v. Farmers Ins. Co. of Oregon* (Or. 1996), 918 P.2d 95, 97 (recognizing the inherently derivative nature of claims for underinsured motorist coverage, but concluding "the liability of an insurer for failure to provide such coverage is based on its contract with the insured, not on the uninsured driver's negligent act"). Thus, in the present case, we turn to the terms of the contract at issue to determine whether the release signed by Holeman precludes her from recovering underinsured motorist benefits from Farmers Alliance. Therefore, we must determine whether that portion of the policy which obligates Farmers Alliance to "pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'underinsured motor vehicle,'" requires that Holeman be able to demonstrate she was entitled to compensatory damages from Storey at the time of the accident, or at the time she filed her claim for underinsured motorist benefits.

¶22 Holeman urges this Court to look to the contract itself and construe the phrase, "legally entitled to recover," in a manner consistent with the remaining terms of the insurance policy, as well as with the public policy of this State. So construed, Holeman asserts, that portion of the policy which obligates Farmers Alliance to "pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of 'an underinsured motor vehicle,'" requires only that she be able

to establish she was entitled to compensatory damages at the time of the accident in order to recover underinsured motorist benefits.

¶23 Holeman first argues the terms of the policy itself required her to exhaust, presumably by judgment or settlement, Storey's liability policy before she could recover underinsured motorist benefits. Holeman contends her entitlement to seek underinsurance benefits matured only after she recovered under Storey's liability policy, and asserts that, in reaching a settlement with Storey, she did just as the Farmers Alliance policy required. Holeman focuses on that section of the policy's underinsurance endorsement which provides as follows:

> If this insurance provides a limit in excess of the amount required by the applicable law where a covered "auto" is principally garaged, we will pay only after all liability bonds or policies have been exhausted by judgments or payments.

¶24 Holeman argues the foregoing contractual provision precluded her from seeking indemnification from Farmers Alliance until she had received full payment under Storey's liability policy. Holeman also points to a number of other provisions to further support her argument that, in settling with Storey, she was in fact complying with Farmers Alliance's attempt to condition its liability for underinsured motorist benefits upon the exhaustion of Storey's liability policy. For example, Holeman notes the policy defines an underinsured motor vehicle as one "to which a liability bond or policy applies at the time of an 'accident' but the amount <u>paid</u> under that bond or policy to the 'insured' is not enough to pay the full amount the insured is legally entitled to recover as damages." (Emphasis added.) Holeman also points to that portion of the uninsured motorist endorsement which states "[t]he amount of any damages shall be reduced by all sums paid by or for anyone who is legally responsible, including all sums paid under the Coverage Part's LIABILITY COVERAGE." Holeman argues it is clear from the foregoing provisions that Farmers Alliance not only anticipated, but attempted to require, that she exhaust all other applicable liability policies before asserting a claim for underinsured motorist benefits.

¶24 In construing the phrase, "legally entitled to recover," we will read the insurance

policy as a whole, and will if possible, reconcile its various parts to give each meaning and effect. *Fitzgerald v. Aetna Ins. Co.* (1978), 176 Mont. 186, 192, 577 P.2d 370, 373 (citing *Aleksich v. Mutual Benefit Health & Accident Ass'n* (1945), 118 Mont. 223, 164 P.2d 372). Furthermore, "in determining the contract's purpose and intent, we [will] examine the contract as a whole, giving no special deference to any specific clause." *Nimmick v. State Farm* (1995), 270 Mont. 315, 321, 891 P.2d 1154, 1158. We will construe any ambiguities contained in the insurance policy against the insurer. *Leibrand v. National Farmers Union Property and Casualty Co.* (1995), 272 Mont. 1, 6, 898 P.2d 1220, 1223 (citing *Bauer Ranch, Inc. v. Mountain West Farm Bureau* (1985), 215 Mont. 153, 156, 695 P.2d 1307, 1309); *Wellcome v. Home Ins. Co.* (1993), 257 Mont. 354, 356, 849 P.2d 190, 192. An "[a]mbiguity exists only when the contract taken as a whole in its wording or phraseology is reasonably subject to two different interpretations." *Canal Ins. Co. v. Bunday* (1991), 249 Mont. 100, 105, 813 P.2d 974, 977. We have held that "the question of ambiguity is examined from the viewpoint of a consumer with average intelligence but not trained in the law or insurance business." *Leibrand*, 272 Mont. at 10, 898 P.2d at 1225.

¶25 As noted above, Farmers Alliance suggests the phrase, "legally entitled to recover," mandates that Holeman be presently able to demonstrate her entitlement to damages from Storey in order to recover underinsured motorist benefits. Interpreted as suggested by Farmers Alliance, that portion of the policy requiring that Holeman demonstrate her legal entitlement to compensatory damages from Storey would clearly conflict with the policy's additional requirement that Holeman exhaust all applicable liability policies prior to recovering underinsured motorist benefits. For example, the policy would appear to, on the one hand, require that Holeman preserve her cause of action against Farmers Alliance, while on the other hand, mandate that she settle with Storey's insurer. In light of Farmers Alliance's agreement to pay underinsured motorist benefits "only after all liability bonds or policies have been exhausted by judgments or payments," we conclude it was reasonable for Holeman to believe that she could not have sought indemnification from Farmers Alliance until she had first settled with Storey, thereby exhausting the liability portion of his insurance policy. Moreover, as Holeman notes, the policy in question defines an underinsured motor vehicle as one "to which a liability bond or policy applies at the time of an 'accident' but the amount <u>paid</u> under that bond or policy to the 'insured' is not enough to pay the full amount the insured is legally entitled to recover as damages." (Emphasis added.)

¶26 By its terms, the policy thus suggests that Farmers Alliance will consider a vehicle underinsured only if an amount has already been paid under an applicable liability bond or policy. Because review of the contract as a whole indicates Farmers Alliance sought to condition its liability for underinsured motorist benefits upon the exhaustion of Storey's liability policy, we conclude it cannot now escape that liability based on Holeman's attempts to comply with the policy by settling with Storey. As demonstrated by the foregoing, the contractual interpretation suggested by Farmers Alliance would place the policy's various provisions in conflict, thereby giving rise to an ambiguity. Bound as we are to interpret the insurance policy as a whole and to construe any ambiguities against the insurer, we conclude the policy requires that Holeman demonstrate she was entitled to compensatory damages from Storey, not at the time of her claim for underinsured motorist benefits, but at the time of the accident. That Holeman has released Storey from liability does not preclude her from establishing, in a separate action against Farmers Alliance, fault and damages on the part of Storey.

¶27 Based on the foregoing, we answer the first question certified to us in the negative, and hold the release in question does not place the insured in the position of being no longer legally entitled to recover compensatory damages from the owner or driver of the underinsured motor vehicle and thus does not bar the estate from recovering pursuant to the underinsured motorist provisions of the Farmers Alliance policy.

QUESTION 2

¶28 Can the underinsured motorist coverages and auto medical payments coverages be stacked under the Farmers Alliance policy at issue in this case, where multiple vehicles are insured under one policy where a premium is charged for coverage of each motor vehicle listed within the policy?

¶29 Having answered the first certified question in the negative, we will accordingly address the second certified question in its entirety. In so doing, we turn first to the question of whether the underinsured motorist coverages may be stacked under the Farmers Alliance policy at issue in this case.

A. Stacking of underinsured motorist coverages

¶30 Asking that we answer the second certified question in the negative, Farmers Alliance first argues we ought to honor the terms of the policy, which expressly prohibit Holeman from stacking underinsured motorist coverages in the present case. Pointing to our decision in *Farmers Alliance Mutual Insurance Co. v. Holeman* (1996), 278 Mont. 274, 281, 924 P.2d 1315, 1320 (hereinafter *Holeman I)*, Farmers Alliance argues we must look to the terms of the policy itself to determine whether Holeman can stack the underinsured motorist coverages contained therein.

¶31 In *Holeman I*, we interpreted § 33-23-303, MCA, and concluded that statute "does not prohibit the stacking of the medical payment coverage and the *under*insured motorist coverage available under a policy of motor vehicle liability insurance where a premium is charged for coverage of each motor vehicle listed within that policy." *Holeman I*, 278 Mont. at 282, 924 P.2d at 1320. We recognized that the Montana Legislature had instead left "[t]he question of whether excess or additional coverages, such as underinsurance coverage, can be stacked . . . as a matter of policy interpretation." *Holeman I*, 278 Mont. at 281, 924 P.2d at 1320. Relying on our determination that the permissibility of stacking underinsurance coverages is "a matter of policy interpretation," Farmers Alliance argues that whether Holeman may stack the underinsured motorist coverages at issue in the present case depends solely upon the terms of the policy.

¶32 The policy at issue clearly purports to prohibit an insured from stacking underinsured motorist benefits, providing in pertinent part that:

> D. LIMIT OF INSURANCE
>
>> 1. Regardless of the number of covered "autos," "insureds," premiums paid, claims made or vehicles involved in the "accident," the most we will pay for all damages resulting from any one "accident" is the LIMIT OF INSURANCE for [UNDERINSURED] MOTORISTS COVERAGE shown in the Declarations.

¶33 Although we determined in *Holeman I,* that the permissibility of stacking

underinsured coverages is "a matter of policy interpretation," we did not have occasion to address the validity of the anti-stacking provisions contained in the policy at issue. To answer the question before us, we must begin where we left off in *Holeman I*, and determine whether the policy's anti-stacking provisions are indeed valid, or void as against the public policy of this State. In so doing, we will address each of Farmers Alliance's two remaining arguments in turn.

¶34 Relying on our decision in *Grier v. Nationwide Mutual Insurance Co.* (1991), 248 Mont. 457, 812 P.2d 347, Farmers Alliance argues, as it did before this Court in *Holeman I*, that the policy's underinsured motorist coverage is actually part of the policy's uninsured motorist coverage, the stacking of which is clearly prohibited by § 33-23-203, MCA. More specifically, Farmers Alliance asserts that because the underinsured motorist provision in the instant policy is contained within the section governing uninsured motorist coverage, the underinsured coverage is actually a part of the uninsured motorist coverage, and as such cannot be stacked in light of § 33-23-203, MCA.

¶35 In *Holeman I*, we rejected the precise argument presently advanced by Farmers Alliance. Although our sole task in *Holeman I* was to interpret the anti-stacking language of § 33-23-203, MCA, rather than the terms of the policy itself, we nevertheless proceeded to distinguish the policy at issue in *Grier* from the one in the present case. For example, we noted that "unlike the policy at issue in *Grier*, the instant policy sets forth the underinsurance coverage on the declarations page." *Holeman I*, 278 Mont. at 281, 924 P.2d at 1319. In accordance with our decision in *Holeman I*, we determine that the policy at issue in *Grier* differs substantively from the one at issue in the present case, and thus conclude that *Grier* does not control our analysis.

¶36 Finally, Farmers Alliance argues Holeman cannot stack underinsured motorist coverages because Leonard qualified as an insured only by virtue of his occupancy in the insured vehicle. Because Leonard was not a named insured who bought and paid for the policy at issue, Farmers Alliance asserts, he could not reasonably expect to share in the expanded coverage afforded by the stacking of underinsured motorist benefits. Farmers Alliance relies on a number of cases from various jurisdictions in support of its argument that there exists a material distinction between a named insured who has purchased and paid for an insurance policy, and an individual who qualifies as an insured only by virtue of his or her occupancy in an insured vehicle at

the time of an accident.

¶37 For example, Farmers Alliance points to the case of *Ohio Casualty Insurance Co. v. Stanfield*, (Ky. 1979), 581 S.W.2d 555, in which the Kentucky Supreme Court distinguished between a first class of individuals who are named insureds and thereby "protected regardless of their location or activity from damages caused by injury inflicted by an uninsured motorist," and a second class of insureds whose "protection is confined to damages from injury inflicted by an uninsured motorist while they are 'occupying an insured highway vehicle.'" *Ohio Casualty*, 581 S.W.2d at 557. Recognizing that a first class, named insured may reasonably expect that "his payment of an additional premium will result in increased coverage for those falling within the definition of the 'named insured,'" the court held that the named insured in that case could stack the uninsured motorist coverages contained in his own insurance policy. *Ohio Casualty*, 581 S.W.2d at 559 (quoting *Lambert v. Liberty Mut. Ins. Co.* (Ala. 1976), 331 So. 2d 260, 263). In concluding that the insured could not stack the uninsured coverages contained within his employer's policy, however, the court determined the defendant was a second class insured as to that policy, and could not reasonably expect to share in the broader coverage afforded a first class insured since he did not pay for the additional coverage involved. *Ohio Casualty*, 581 S.W.2d at 559.

¶38 Holeman responds that this Court has already established that there exists no material distinction between a first class named insured who pays premiums on a policy, and a second class insured who qualifies as such only by virtue of his or her occupancy in an insured vehicle. More specifically, Holeman points to our decision in *Sayers v. Safeco Insurance Co.* (1981), 192 Mont. 336, 340, 628 P.2d 659, 662, in which we held that, where the plaintiff qualified as an insured as defined by the policy, we had "no reason to distinguish between persons insured and policyholders who have actually paid the premiums." Instead, we concluded that "[t]he justification for stacking lies not in who has paid for the extra protection, but rather that the protection has been purchased," and held that "[t]he benefits flow to all persons insured." *Sayers*, 192 Mont. at 340, 628 P.2d at 662.

¶39 Pointing to our decision in *Chilberg v. Rose* (1995), 273 Mont. 414, 903 P.2d 1377, Farmers Alliance argues we have since recognized a distinction between named insureds and those who qualify as insureds only by virtue of their occupancy in an insured vehicle. In *Chilberg*, the plaintiff was injured while riding in a car owned by

Jay Dean and insured through Mid-Century Insurance Company. *Chilberg*, 273 Mont. at 415, 903 P.2d at 1378. At the time of the accident, Dean had three cars insured under separate policies through Mid-Century. *Chilberg*, 273 Mont. at 415, 903 P.2d at 1378. The plaintiff sought to stack the uninsured motorist and medical benefits provided for in all three policies. *Chilberg*, 273 Mont. at 415, 903 P.2d at 1378. We held the plaintiff was not entitled to stack those coverages on the grounds that he did "not qualify as an insured under the two disputed policies because he was not occupying the cars insured under the two disputed policies." *Chilberg*, 273 Mont. at 417, 903 P.2d at 1379. We noted that "Chilberg was a passenger who neither had 'reasonable expectations' of coverage under the policy nor did he qualify as an insured spouse or family member under more than one policy." *Chilberg*, 273 Mont. at 418, 903 P.2d at 1380.

¶40 Although we recognized that the plaintiff in *Chilberg* was an occupant who had no "reasonable expectations" of coverage under all three policies, we prohibited stacking on the primary grounds that the plaintiff did not qualify as an insured under the two other Mid-Century policies. In the present case, there is only one policy at issue. In its certification order, the United States District Court clarified that "Gary Lee Leonard is an insured for purposes of underinsured motorist coverage and auto medical payments coverage under the policy at issue." As we noted in *Sayers*, benefits for which the insurer has received valuable consideration "flow to all persons insured." As an insured, Leonard was thus entitled to share in the benefits for which Farmers Alliance had received valuable consideration. *Sayers*, 192 Mont. at 340, 628 P.2d at 662. Whether Leonard qualified as an insured because he purchased and paid for the policy at issue, or by virtue of his occupancy in the insured vehicle is immaterial. The fact is, Leonard was an "insured" under the terms of the policy, and as such was entitled to the same coverage afforded any insured.

¶41 To identify the scope of that coverage, and to determine whether Leonard, as an insured, was entitled to stack the underinsured motorist coverages contained within the policy, we turn for guidance to our decision in *Bennett v. State Farm Mutual Automobile Insurance Co.* (1993), 261 Mont. 386, 862 P.2d 1146. In *Bennett*, we held that "[a]n 'other insurance' clause that prohibits stacking of underinsured motorist coverage provided by separate policies from the same insurer is void as against Montana public policy." *Bennett*, 261 Mont. at 390, 862 P.2d at 1149. In so doing, we recognized the public policy that "an insurer may not place in an insurance policy a provision that defeats coverage for which the insurer has received valuable

consideration," and wrote that "[t]he purpose of underinsured motorist coverage is to provide a source of indemnification for accident victims when the tort-feasor does not provide adequate indemnification." *Bennett*, 261 Mont. at 389, 862 P.2d at 1148. We then concluded that "the public policy considerations that invalidate contractual 'anti-stacking' provisions in an uninsured motorist endorsement also support invalidating those provisions in an underinsured motorist endorsement." *Bennett*, 261 Mont. at 389, 862 P.2d at 1148.

¶42 Although arguably distinguishable from the case at hand, *Bennett* nevertheless governs our analysis in the present case. For example, although there were two separate insurance policies at issue in *Bennett*, but only one at issue in the present case, we conclude that distinction is immaterial. Furthermore, as amicus notes, we based our decision in *Bennett,* not only on public policy considerations, but also on the doctrine of reasonable expectations. More specifically, we noted that because underinsured motorist coverage generally "does not depend on the insured person occupying an insured vehicle," the insured in that case "could reasonably expect to recover damages up to the limit of both policies under which she was an insured and for which separate premiums had been paid." *Bennett*, 261 Mont. at 389, 862 P.2d at 1148. Moreover, we stated that "Montana citizens should have a reasonable expectation that when they purchase separate policies for underinsured motorist coverage, they will receive adequate compensation for losses caused by an underinsured motorist, up to the aggregate limits of the policies they have purchased." *Bennett*, 261 Mont. at 390, 862 P.2d at 1149.

¶43 We have recognized, however, that status as an insured, and any connected underinsured motorist coverage, may indeed depend upon occupancy in an insured vehicle. *See Chilberg*, 273 Mont. at 418, 903 P.2d at 1380. Particularly in light of our holding in *Chilberg*, it is certainly arguable that Leonard may have had no reasonable expectation of expanded coverage because he did not purchase the policy at issue, but instead qualified as an insured by virtue of his occupancy in an insured vehicle. Despite the apparent inapplicability of the reasonable expectations doctrine in the present case, however, we conclude that the overriding public policy considerations upon which we relied in *Bennett* mandate that Holeman be permitted to stack the underinsured motorist coverages present in this case.

¶44 Worth addressing at this juncture is the assertion by amicus for the Alliance of American Insurers regarding the effect of the 1997 amendments to the anti-stacking

provisions of § 33-23-303, MCA. In 1997, the Montana Legislature enacted Senate Bill 44, thereby amending § 33-23-303, MCA, with the purpose of prohibiting the stacking of all coverages in automobile insurance policies. The present version of § 33-23-303, MCA, thus purports to preclude the stacking of underinsured motorist coverages. Amicus argues that when the Montana Legislature amended § 33-23-303, MCA, to preclude all stacking, it established and defined the public policy of this State. Amicus asserts that "[i]n order to avoid premium increases which may result from" claims of stacking in multi-vehicle policies under underinsured and medical payment coverages, "this Court should recognize that the public policy embodied in Senate Bill 44 does not carry an effective date." In light of the amendments to § 33-23-303, MCA, amicus asks that we revisit the determination we made in *Bennett* that the public policy of this State supports the stacking of underinsured motorist coverages when separate premiums have been paid.

¶45 In *Guiberson v. Hartford Casualty Insurance Co.* (1985), 217 Mont. 279, 288, 704 P.2d 68, 74, we upheld a decision by the district court to stack uninsured motorist coverages despite the subsequent passage of a statute prohibiting the practice. We specifically recognized that, "[a]lthough the law forbids stacking now, we will not apply the law retroactively to deprive the plaintiff of coverage he was entitled to at the time of his accident." *Guiberson*, 217 Mont. at 288, 704 P.2d at 74. Similarly, in the instant case, we will not apply the provisions of § 33-23-303, MCA, or the public policy it embodies, retroactively to deprive Leonard of coverage he was entitled to at the time of the accident.

¶46 Based on the foregoing, we conclude that Holeman is entitled to stack the underinsured motorist coverages contained in the Farmers Alliance policy at issue in this case, in light of the fact that multiple vehicles were insured under one policy and separate premiums were charged for coverage of each motor vehicle listed within the policy.

B. Stacking of auto medical payments coverages

¶47 Having determined that Holeman may stack the underinsured motorist coverages contained in the Farmers Alliance policy, we must next determine whether she is similarly entitled to stack the policy's auto medical payments coverages.

¶48 In support of its argument against stacking, Farmers Alliance points to that

portion of the auto medical payment coverage endorsement which provides as follows:

> D. LIMIT OF INSURANCE.

>> 1. Regardless of the number of covered "autos," "insureds," premiums paid, claims made or vehicles involved in the "accident," the most we will pay for all damages resulting from any one "accident" is the LIMIT OF INSURANCE for [AUTO MEDICAL PAYMENTS COVERAGE] shown in the Declarations.

¶49 As it did in support of its argument against the stacking of underinsured motorist coverages, Farmers Alliance argues the policy itself expressly precludes an insured from stacking auto medical payment coverages. Farmers Alliance also relies on cases from other jurisdictions in which various courts have upheld similar policy provisions in the absence of a statutory mandate that insurers provide coverage for medical expenses. *See, e.g.*, *Lemoi v. Nationwide Mut. Ins. Co.* (R.I. 1982), 453 A.2d 758; *Pettid v. Edwards* (Neb. 1976), 240 N.W.2d 344.

¶50 In light of our recent decision in the case of *Ruckdaschel v. State Farm Mutual Automobile Insurance Co.* (Mont. 1997), 948 P.2d 700, 54 St. Rep. 1210, we conclude otherwise, and hold that Holeman is entitled to stack the auto medical payment coverages contained within the Farmers Alliance policy at issue in this case. In *Ruckdaschel*, a plaintiff was walking when she was struck and injured by a vehicle. *Ruckdaschel*, 948 P.2d at 701, 54 St. Rep. at 1211. At the time of the accident, the plaintiff had three separate medical payments policies issued by State Farm, for which she and her husband had paid separate premiums. *Ruckdaschel*, 948 P.2d at 701, 54 St. Rep. at 1211.

¶51 Relying on our decision in *Bennett*, and the public policy articulated within, we held that State Farm could not rely on the language of its amendatory endorsement to deny coverage under each policy when it received a separate premium for each policy. *Ruckdaschel*, 948 P.2d at 702, 54 St. Rep. at 1211. We again upheld and

applied the public policy that "an insurer may not place in an insurance policy a provision that defeats coverage for which the insurer has received valuable consideration." *Ruckdaschel*, 948 P.2d at 702, 54 St. Rep. at 1211. We concluded "the District Court did not err when it held that the public policy concerns which apply in statutorily required insurance coverage contexts also apply to optional types of insurance coverage such as, in this case, medical payment coverage." *Ruckdaschel*, 948 P.2d at 703, 54 St. Rep. at 1212.

¶52 In the present case, we similarly conclude that, in light of Montana's public policy, and because Farmers Alliance received separate premiums for each vehicle insured under the policy at issue, it cannot now rely on the policy's exclusionary language to deny coverage.

¶53 Based on the foregoing analysis, we answer the second certified question in the affirmative, and conclude that the underinsured motorist coverages and auto medical payments coverages may be stacked under the Farmers Alliance policy at issue in this case, where multiple vehicles are insured under one policy and where a premium is charged for coverage of each motor vehicle listed within the policy.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART

Justice Karla M. Gray, dissenting.

¶54 I concur in the Court's opinion on the first certified question from the United

States District Court for the District of Montana, Billings Division. I respectfully dissent from that opinion on the second certified question, which is whether certain coverages can be stacked under the policy at issue in this case.

¶55 There is no dispute that the Farmers Alliance insurance policy specifically prohibited stacking: "THE STACKING OF UNDERINSURED MOTORIST COVERAGE IS PROHIBITED . . . ." If stacking is allowed, it must be allowed on public policy grounds which override the provisions of the insurance policy. I agree with the Court that resolution of the second certified question hinges on whether the issue is governed by *Bennett*, in which stacking was imposed on public policy grounds, or by *Chilberg*, in which this Court held that public policy did not override the terms of the insurance policy prohibiting stacking. The Court relies on *Bennett*. For the following reasons, it is my view that *Chilberg* controls.

¶56 In *Bennett*, the plaintiff was a named insured under one of the two insurance policies sought to be stacked, and the spouse of the named insured under the other policy. In that case, as the Court points out, we recognized the public policy that "an insurer may not place in an insurance policy a provision that defeats coverage for which the insurer has received valuable consideration." *Bennett*, 261 Mont. at 389, 862 P.2d at 1148. We stated that "Montana citizens should have a reasonable expectation that when they purchase separate policies for underinsured motorist coverage, they will receive adequate compensation for losses caused by an underinsured motorist, up to the aggregate limits of the policies they have purchased." *Bennett*, 261 Mont. at 390, 862 P.2d at 1149.

¶57 The plaintiff in *Chilberg* was injured when another vehicle hit the car in which he was a passenger. The driver of the at-fault vehicle was uninsured. The car in which Chilberg was a passenger was insured with Mid-Century Insurance, which also insured two other cars for the same owner. The owner paid separate premiums for each of the coverages provided in the three policies. Chilberg argued that the three policies should be stacked. This Court disagreed.

> The public policy and rationale we restated in *Bennett* is not furthered by permitting Chilberg to stack the policies in the instant case. Chilberg was a passenger who neither had "reasonable expectations" of coverage under the policy nor did he qualify as an insured spouse or family member under more than one policy.

*Chilberg*, 273 Mont. at 418, 903 P.2d at 1380.

**¶58 The same can be said in the present case. Leonard was a passenger who cannot plausibly be argued to have had "reasonable expectations" that coverages would be stacked under the vehicle owner's insurance policy. I conclude that the "reasonable expectation" public policy justification for stacking, which we applied in *Bennett* but rejected in *Chilberg*, does not apply here. Nor did Leonard qualify as an insured spouse or family member under more than one policy. Those bases for overriding the antistacking terms of the insurance policy have no support under these facts.**

**¶59 In *Sayers*, a 1981 case involving the stackability of uninsured coverage as to a stranger to the insurance policy, this Court stated:**

> Safeco contends only an insured who pays the premiums for the additional coverage should be allowed to stack, citing several other jurisdictions that have so held. We are not persuaded by the authority cited. The rule of *Kemp* and the authorities cited therein control. Sayers was an insured as defined by the policy. Under these facts there is no reason to distinguish between persons insured and policyholders who have actually paid premiums. The justification for stacking lies not in who has paid for the extra protection, but rather that the protection has been purchased. The benefits flow to all persons insured.

*Sayers*, 192 Mont. at 340, 628 P.2d at 662. As this Court noted in *Holeman I*, 278 Mont. at 277, 924 P.2d at 1317, *Sayers* is no longer good law. Unlike the present case, *Sayers* dealt with uninsured, rather than underinsured, motor vehicle coverage, and § 33-23-203, MCA, was amended in 1997 to specifically prohibit stacking of uninsured motor vehicle insurance. Thus, *Sayers* has been "overruled" statutorily. The Court states, however, that the rationale underlying *Sayers* remains logically sound. I disagree.

**¶60 The premise of *Sayers*, that stacking was justified because it was paid for as "extra protection," is faulty. The "extra protection" purchased for multiple vehicles was not for the purpose of stacking, but for the multiplicity of possible drivers and passengers who might occupy the vehicles insured. In Hampton v. Allstate Ins. Co.**

(Ariz. 1980), 616 P.2d 78, for example, the court reasoned that it was theoretically possible that at one given moment each of several insured vehicles could be operating and be in individual accidents with uninsured motorists; each operator would then have coverage under each policy, which was the risk insured against and for which the premium had been paid. I conclude that the *Sayers* rationale concerning extra protection purchased does not provide a justification for overriding the terms of the insurance contract and imposing stacking.

¶61 As to whether medical payments coverage can be stacked, the majority relies on the *Ruckdaschel* opinion in deciding that they can. Again, I disagree. *Ruckdaschel* relied upon the *Bennett* rationale; as in *Bennett*, the plaintiff in *Ruckdaschel* was an insured who had purchased the policies under which claim was made. Under reasoning analogous to that discussed above, I conclude that public policy does not justify overriding the terms of an insurance policy to impose stacking of medical payment policy limits for a plaintiff who is a stranger to the insurance policy.

¶62 In answer to the second certified question, then, I conclude that the estate of Gary Lee Leonard is entitled to the limit of the uninsured/underinsured motorist coverage and medical payments coverage on the one particular vehicle that was involved in the accident on November 9, 1991, based upon Leonard's "occupancy" of that vehicle at the time the third-party tortfeasor struck and killed him. Therefore, I would answer the certified question "No."

/S/ KARLA M. GRAY