Justice Beth Baker delivered the Opinion of the Court.
***202 ¶1 The United States District Court for the District of Montana certified a question to this Court to address the Estate of Darrell L. Ward's third-party claim to stacked liability limits in an aircraft insurance policy that covered multiple aircraft. We accepted the question and have reformulated it pursuant to M. R. App. P. 15(4) as follows:
Is the Estate of Darrell L. Ward entitled to stack the limits of liability coverage for three separate aircraft under the terms of an insurance policy issued to the pilot of an aircraft in which Ward was a passenger at the time it crashed?
¶2 We conclude that the answer to the reformulated question is no.
PROCEDURAL AND FACTUAL BACKGROUND
¶3 Mark Melotz was piloting his aircraft, FAA Number N9936T, with Darrell Ward as a passenger. The plane crashed, and both Melotz and Ward were killed. At the time of *383 the accident, Melotz insured N9936T and two other aircraft under one insurance policy issued by U.S. Specialty Insurance Company ("USSIC"). Melotz paid a separate premium for each aircraft.
¶4 The policy's applicable coverage provision provides as follows:
1. What We Cover
We will pay damages you , and anyone we protect, are legally required to pay for bodily injury or property damage caused by an occurrence during the policy period.
...
e. Coverage DL covers bodily injury to passengers and others and property damage in a combined limit of liability for each occurrence which includes a lower limit for each passenger .
The most we will pay for bodily injury to each passenger is shown in item 6DL opposite "each person". The most we will pay for all bodily injury and property damage is shown in item 6DL opposite "each occurrence".
The policy identifies each aircraft on the coverage identification page in item 6 with a $100,000 limit for "each person," and a $1,000,000 limit for "each occurrence," as follows:
***203 ?
The policy defines an "occurrence" as "a sudden event ... involving the aircraft during the policy period, neither expected nor intended by you , that causes bodily injury ."
¶5 Following Ward's death, USSIC paid Ward's Estate $100,000-the per-passenger limit for bodily injury claims involving N9936T. The Estate argued that it was entitled to stack the coverage of each aircraft's per-passenger limit, for a total of $300,000. USSIC filed a declaratory judgment action in the United States District Court for the District of Montana, seeking a declaration that it was under no duty or obligation to pay more than $100,000 to Ward's Estate under the terms of the policy and that USSIC's aircraft policy coverage for passengers cannot be stacked. The Estate and USSIC submitted cross-motions for summary judgment. The U.S. District Court certified to this Court the question of stacking insurance coverage limits in aviation cases.
STANDARD OF REVIEW
¶6 M. R. App. P. 15(3) permits this Court to answer a question of law certified to it by another qualifying court. Our review of a certified question is "purely an interpretation of the law as applied to the agreed facts underlying the action." N. Pac. Ins. Co. v. Stucky , 2014 MT 299, ¶ 18, 377 Mont. 25, 338 P.3d 56 (internal citation omitted).
DISCUSSION
¶7 The interpretation of an insurance contract is a question of law. Fisher v. State Farm Mut. Auto. Ins. Co. , 2013 MT 208, ¶ 11, 371 Mont. 147, 305 P.3d 861. General rules of contract law apply to insurance policies. Kilby Butte Colony, Inc. v. State Farm Mut. Auto. Ins. Co. , 2017 MT 246, ¶ 10, 389 Mont. 48, 403 P.3d 664. "When interpreting an insurance contract, we accord the usual meaning to the terms and the words used, and we construe them using common sense." Fisher , ¶ 13 (citing Modroo v. Nationwide Mut. Fire Ins. Co. , 2008 MT 275, ¶ 23, 345 Mont. 262, 191 P.3d 389 ). An insurance contract is ambiguous if it is "reasonably subject to two ***204 different interpretations." Fisher , ¶ 15 (internal citations omitted). Whether a provision of an insurance contract is "reasonably susceptible to two different interpretations" is determined from *384 "the viewpoint of a consumer with average intelligence, but untrained in the law or insurance business." Fisher , ¶ 15 (internal citations omitted). A provision is not ambiguous "just because a claimant says so or just because the parties disagree as to [its] meaning." Fisher , ¶ 15 (internal citations omitted).
¶8 The USSIC policy provides coverage in a "combined limit of liability for each occurrence which includes a lower limit for each passenger ." The Coverages and Limits of Liability table states, "The most we will pay under each coverage we provide is shown below for each aircraft." The policy defines aircraft as the aircraft shown on the Coverage Identification Page of the policy, where N9936T and two other aircraft are listed. The limit of liability for each aircraft is $100,000 for each passenger, up to a combined limit of $1,000,000 for each occurrence. An occurrence is a "sudden event ... involving the aircraft ... that causes bodily injury ." (Bold emphasis in original; italicized emphasis added). The policy does not define the word "involving," but a common-sense reading of that term makes plain that it refers to the aircraft that is a part of the sudden event that caused bodily injury. See Involve, Oxford English Dictionary (Compact ed. 1971) ("to enfold, envelop, entangle, include"). The aircraft that was part of the crash resulting in Ward's and Melotz's deaths was N9936T. Although the word "aircraft" could refer to either the singular or the plural, the provision must be read as a whole. See Farmers All. Mut. Ins. Co. v. Holeman , 1998 MT 155, ¶ 25, 289 Mont. 312, 961 P.2d 114. Reading the entire clause, it is unambiguous that the aircraft must be "involved" to be part of an occurrence.
¶9 An unambiguous insurance provision is enforced unless the provision violates public policy or is against good morals. Fisher , ¶ 25. Having determined that the USSIC policy unambiguously includes only the aircraft that is part of the sudden event, we next consider the Estate's argument that public policy requires the stacking of the third-party liability coverage. "As a general rule, the Montana public policy is prescribed by the legislature through its enactment of statutes." Hardy v. Progressive Specialty Ins. Co. , 2003 MT 85, ¶ 32, 315 Mont. 107, 67 P.3d 892 (citing Duck Inn, Inc. v. Mont. St. Univ. , 285 Mont. 519, 523-24, 949 P.2d 1179, 1182 (1997) ).
¶10 Insurance provisions that violate express statutes are contrary to public policy and void. Fisher , ¶ 25. There is no Montana ***205 statute that applies specifically to aviation policies. Section 33-23-203(1), MCA, pertains to the stacking of coverage limits on "motor vehicle liability policies." Montana law defines both motor vehicle and aircraft. " 'Motor vehicle' means a vehicle propelled by its own power and designed primarily to transport persons or property on the highways of the state." Section 33-23-204(1)(a), MCA. " 'Aircraft' means a contrivance used or designed for navigation of or flight in the air." Section 67-1-101(4), MCA. Section 33-23-203, MCA, by its terms does not apply to aircraft liability policies. Indeed, Montana does not statutorily regulate aviation insurance in any manner. Compare with, e.g. , Haw. Admin. R. § 19-17.1-8 (Hawaii law requires those persons renting hangar space at public airports to maintain general liability insurance); Md. Code Ann., Trans. § 5-1002 (Maryland law requires liability insurance for aircraft used for commercial purposes). Further, the aircraft liability insurance requirements set forth by Congress apply only to air carriers and charter air carriers, not to general aviation aircraft.[1] 49 U.S.C. § 41112. Enactments of the Montana Legislature and Congress offer no guidance setting forth public policy regarding stacking of general aviation policies because neither has a statute governing the issue. No express statutes apply to the USSIC insurance policy, and it thus does not contravene any public policy set by statute.
¶11 As we observed in Fisher , ¶ 33, when there is no statute guiding the applicable policy, insurance provisions still may be against public policy and therefore void. We have, for example, voided insurance policies' subrogation clauses when they required the insured to reimburse contractual medical *385 payments ("med-pay") benefits from their settlements with a third-party tortfeasor. See, e.g. , Youngblood v. Am. States Ins. Co. , 262 Mont. 391, 397, 866 P.2d 203, 206 (1993) ; Allstate Ins. Co. v. Reitler , 192 Mont. 351, 356, 628 P.2d 667, 670 (1981). We also have voided provisions that render coverage "illusory" by defeating coverage for which the insurer has received valuable consideration. Hardy , ¶¶ 38, 40 (citing Bennett v. State Farm Mut. Auto. Ins. Co. , 261 Mont. 386, 389, 862 P.2d 1146, 1148 (1993) ). In Hardy , the insured purchased a motor vehicle policy that provided $50,000 per person in underinsured motorist coverage for three separate vehicles. Hardy , ¶ 8. Due to an offset in the contract and Montana's minimum mandatory coverage requirements, the insured's ***206 coverage would be offset by at least $25,000 in practically all circumstances. Hardy , ¶ 17. Thus, in nearly all conceivable situations the insurer's promise to pay up $50,000 would not be honored. Hardy , ¶ 28. This Court held that since the insurer would hardly, if ever, provide the insured with the amount of coverage she thought that she purchased, the coverage was illusory. Hardy , ¶ 29.
¶12 The policy at issue here does not fall under either of these situations. There is no subrogation clause at issue, nor is the coverage illusory, because the Estate received the maximum benefits of the applicable coverage for the involved aircraft. Melotz paid a premium to cover each aircraft, with benefits limited to $100,000 per passenger and $1,000,000 per occurrence. The policy allowed simultaneous coverage for pilots other than Melotz if they met the Open Pilot Warranty for the named aircraft.[2] The occurrence at issue involved only one insured aircraft. The Estate received the full per-passenger benefit from the involved aircraft's policy. Not allowing the three coverages to be stacked therefore does not render the coverage illusory.
¶13 The Estate argues that the reasonable expectations doctrine requires that USSIC honor the combined coverages Melotz purchased because it charged multiple premiums for multiple coverages. Melotz adds that he had an expectation that the liability coverage purchased for N9936T would be commensurate with all premiums he paid, and because he paid multiple premiums the coverages therefore should be stacked. The " 'reasonable expectations doctrine' mandates that, unless the terms of an insurance policy 'clearly demonstrate an intent to exclude coverage,' an insurance buyer's 'objectively reasonable expectations' regarding the nature of the policy 'should be honored notwithstanding the fact that a painstaking study of the policy would have negated those expectations.' " Lenz v. FSC Secs. Corp. , 2018 MT 67, ¶ 29, 391 Mont. 84, 414 P.3d 1262 (quoting Giacomelli v. Scottsdale Ins. Co. , 2009 MT 418, ¶ 42, 354 Mont. 15, 221 P.3d 666 ). The reasonable expectations doctrine is public policy-based. It requires "liberal construction of insurance contracts in favor of coverage when the policy language is such that 'an ordinary, objectively reasonable person ... would fail to understand' that the policy technically does not provide the coverage at issue or where 'circumstances attributable to'
***207 the insurer would cause 'an ordinary, objectively reasonable person' to believe that the coverage exists." Lenz , ¶ 29 (quoting Bailey v. Lincoln Gen. Ins. Co. , 255 P.3d 1039, 1048-49 (Colo. 2011) ). Under the principle of reasonable expectations, the terms of insurance policies are construed in their plain, ordinary, and popular sense. Appleman on Insurance Law & Practice § 4254 (Richard B. Buckley ed., 2011).
¶14 Whether a claimant has a reasonable expectation to stack insurance coverage depends on the plain, ordinary language of the policy and the status of the claimant. In Chilberg v. Rose , 273 Mont. 414, 419, 903 P.2d 1377, 1380 (1995), we held that a claimant could not stack uninsured motorist coverage on three policies because he did not qualify as an insured under two of the policies.
*386 Chilberg was injured when the vehicle in which he was a passenger was in an accident. Chilberg , 273 Mont. at 415, 903 P.2d at 1378. The vehicle was covered under a policy that provided coverage for medical expenses and for bodily injury caused by uninsured motorists. Chilberg , 273 Mont. at 415, 903 P.2d at 1378. At the time of the accident, the owner also had separate insurance policies on two other vehicles for which he paid separate premiums. Chilberg , 273 Mont. at 415, 903 P.2d at 1378. The three separate policies covered the "named insured" or "any other person while occupying [the] insured car." Chilberg , 273 Mont. at 417, 903 P.2d at 1379. Chilberg alleged that he was entitled to stack the coverages of all three vehicles. Chilberg , 273 Mont. at 415, 903 P.2d at 1378. This Court held that Chilberg did not have a reasonable expectation of coverage under the three policies because he did not qualify as an insured for two of the policies; he was neither the named insured nor a passenger in the other two vehicles. He was therefore not entitled to stack the policies. Chilberg , 273 Mont. at 418, 903 P.2d at 1380. The public policy rationale underlying stacking, "namely prohibiting insurers from defeating coverage which the insured reasonably expected," is not served by stacking the policies when the claimant is not an insured. Chilberg , 273 Mont. at 419, 903 P.2d at 1380.
¶15 We followed similar reasoning in Lierboe v. State Farm Mutual Automobile Insurance Company , 2003 MT 174, 316 Mont. 382, 73 P.3d 800. Lierboe suffered physical injury as a result of an automobile collision. The vehicle Lierboe was driving was covered by a policy that provided med-pay coverage. Lierboe , ¶ 7. Lierboe also had an interest in a corporation that had separate insurance policies providing med-pay coverages for two pickup trucks. Neither truck was involved in the accident. Lierboe , ¶ 8. One truck's policy expressly provided that there ***208 was no med-pay coverage for bodily injury "sustained while occupying or through being struck by a vehicle owned or leased by you or any other relative, which is not insured under this coverage." Lierboe , ¶ 12 (emphasis omitted). The truck policy therefore expressly excluded coverage for vehicles not insured under the truck policy. Lierboe did not qualify as an insured under the truck policy because she was not occupying the truck when the accident occurred, and she therefore could not stack the med-pay coverage. Lierboe , ¶ 19. This Court later reaffirmed that Lierboe applies when "a claimant seeks to stack coverages from a vehicle she does not own and from an insurance policy she did not purchase." State Farm Mut. Auto. Ins. Co. v Gibson , 2007 MT 153, ¶ 22, 337 Mont. 509, 163 P.3d 387.
¶16 In contrast, we have held that an insured claimant has a reasonable expectation to recover up to the limits for which the insurer receives separate premiums when the coverage is personal to the insured. Bennett v. State Farm Mut. Auto. Ins. Co. , 261 Mont. 386, 389-90, 862 P.2d 1146, 1149-50 (1993). Bennett was a pedestrian struck by an underinsured motorist. She was insured at the time under two separate State Farm motor vehicle policies. Bennett , 261 Mont. at 387-88, 862 P.2d at 1147. This Court looked to the plain language of the policies to determine what the insured reasonably could expect to recover. Bennett , 261 Mont. at 389-90, 862 P.2d at 1148-49. The insurer paid the limits of one policy. It argued that the underinsured motorist protection of the other policy could not be stacked because an insured cannot reasonably expect that buying a policy on a second car increases the limits of the coverage on the car she already has insured. Bennett , 261 Mont. at 389, 862 P.2d at 1148. This Court noted that State Farm's argument "might be persuasive," but for the clear and unambiguous language of the insurance policy: "We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle." Bennett , 261 Mont. at 389, 862 P.2d at 1148. The statement made the coverage personal to the insured because it was not dependent upon the insured occupying an insured vehicle. Bennett , 261 Mont. at 389, 862 P.2d at 1148. From the plain language of the policy, the insured therefore "could reasonably expect to recover damages up to the limit of both policies under which she was an insured and for which separate premiums had been paid." Bennett , 261 Mont. at 389-90, 862 P.2d at 1148.
*387 ¶17 Relying on Bennett , we clarified in Holeman that a passenger in a covered automobile is entitled to stack underinsured motorist coverages, even if he didn't pay the premiums, when he was an ***209 "insured" under the policy. Holeman , ¶¶ 42-44. Holeman was a passenger in an insured vehicle involved in an accident, and the premiums were paid by the owner of the vehicle. Holeman , ¶¶ 7, 11. For purposes of underinsured motorist and med-pay coverage as defined in the policy, Holeman was an "insured." Holeman , ¶ 11. The policy provided that the insurer is required to pay "all sums the 'insured' is legally entitled to recover." Holeman , ¶ 12. This Court reaffirmed that "the justification for stacking lies not in who has paid for the extra protection, but rather that the protection has been purchased," and "the benefits flow to all persons insured." Holeman , ¶ 39 (quoting Sayers v. Safeco Ins. Co. , 192 Mont. 336, 340, 628 P.2d 659, 662 (1981) ). Regardless whether the claimant had any reasonable expectation to coverage when he did not purchase the policy at issue, he undisputedly qualified as an insured under the terms of the policy by virtue of his occupancy in the insured vehicle. Holeman , ¶ 44. Despite the apparent inapplicability of the reasonable expectations doctrine, we applied the public policy considerations set forth in Bennett to permit the claimant to stack the underinsured motorist coverages because he was an "insured" as defined in the policy. Holeman , ¶ 44.
¶18 The Estate argues that liability coverage under the aircraft policy is, for "all intents and purposes, 'personal and portable,' " and stacking should be allowed. The Estate maintains that since the liability policy "followed" Melotz to newly acquired aircraft, temporary substitute aircraft, and aircraft that he did not own, it was personal and portable. In Jacobson v. Implement Dealers Mutual Insurance Company , 196 Mont. 542, 547-48, 640 P.2d 908, 912 (1982), we discussed uninsured motorist coverage as being personal to the insured, explaining that there is no requirement the insured be occupying an insured vehicle. We reasoned that when coverage is personal to the insured, there is no connection to the "automobile listed on the policy." Jacobson , 196 Mont. at 547-48, 640 P.2d at 912. This is the principle we applied in Bennett to extend coverages to the insured pedestrian. The liability benefits at issue here, in contrast, require a connection with the "involved" aircraft listed on the policy. USSIC's policy provides that liability coverage extends only to damage or injury sustained when an aircraft is involved in an occurrence. Although the insured Melotz would have coverage for an occurrence when piloting some other aircraft, the policy would cover bodily injury to a third party only when that aircraft was involved in an occurrence. The policy requires a connection between an occurrence and the involved aircraft ***210 to cover bodily injury. Because the liability coverage is tied to the involvement of a particular aircraft, it is not reasonable to expect that the policy would pay more than the limits provided for that aircraft.
¶19 The plain language of the USSIC policy and the Estate's status do not entitle it to a reasonable expectation of stacked liability coverage. The policy defines passenger as "any person who is in the aircraft or getting in or out of it." Coverage is limited to the aircraft involved in the crash. As a passenger in N9936T, Ward was an insured under that policy only. Ward did not have a connection to the other two aircraft because he was not a passenger in either of those aircraft and he was not an insured. The policy states that "the most" USSIC will pay per passenger is $100,000 for each occurrence. Similar to Lierboe and Chilberg , the plain language of the policy makes clear that the aircraft not involved in an accident are not part of the occurrence and coverage for those aircraft is not available for that accident. Ward was not an insured and did not have a reasonable expectation of benefits for additional aircraft owned by Melotz that were not "involved" in the crash.
¶20 Finally, the Estate of Melotz does not have a reasonable expectation under the plain language of the policy that Ward is entitled to stack the coverages. Unlike in Holeman , although Melotz paid premiums for three separate polices, Ward was not an "insured" under Melotz's policies for the uninvolved aircraft. And Melotz did not seek benefits under the policy's "liability to others"
*388 coverage. Melotz did not have a reasonable expectation that a third party would be entitled to stack coverages for which that party was not an insured. Melotz paid for coverage that would pay liability damages for bodily injury caused by an occurrence with a separate coverage limit for each aircraft. Any expectation that a passenger would recover more than the $100,000 limit for the aircraft involved in a crash is not objectively reasonable under a common-sense reading of the policy. See Fisher , ¶¶ 13, 22.
CONCLUSION
¶21 The plain, unambiguous language of the contract limits the coverage to the aircraft that is involved in an accident. There is no statute or public policy that mandates payment of the cumulative coverage for separate aircraft in an aviation liability insurance policy that does not provide for such payment. We hold that Melotz's USSIC policy is not subject to stacking of its passenger liability coverages, and we therefore answer "no" to the reformulated certified question.
We Concur:
MIKE McGRATH, C.J.
JAMES JEREMIAH SHEA, J.
JIM RICE, J.
LAURIE McKINNON, J.
DIRK M. SANDEFUR, J.
INGRID GUSTAFSON, J.

"General aviation" refers to aviation that is neither military aviation nor commercial aviation conducted pursuant to certification under 49 U.S.C. § 41102.

Under N9936T, the Open Pilot Warranty provides coverage for "[a]ny pilot having logged a minimum of 300 hours total time and 10 hours in the same make and model as [that] aircraft" is covered under the policy. Each of the other insured aircraft carried its own requirements for pilot qualifications.