No. 02-448

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 85

NED C. HARDY,

        Plaintiff,

   v.

PROGRESSIVE SPECIALTY INSURANCE COMPANY,

        Defendant.

ORIGINAL PROCEEDING:       Certified Question, United States District Court
                                   District of Montana, Missoula Division
                                   The Hon. Donald W. Molloy, Judge presiding.

COUNSEL OF RECORD:

        For Plaintiff:

                Edward K. Duckworth (argued), Duckworth Law Office, Ronan, Montana

        For Defendant:

                Robert J. Phillips (argued), Tammy Wyatt Shaw, Phillips & Bohyer, Missoula, Montana

        For Amicus Montana Trial Lawyers Association:

                L. Randall Bishop (argued), Jarussi & Bishop, Billings, Montana
                Gregory S. Munro, U of M School of Law, Missoula, Montana

        For Amicus National Association of Independent Insurers:

                Peter F. Habein, Bryan G. Willett, Crowley, Haughey, Hanson, Toole & Dietrich, P.L.L.P., Billings, Montana

                                        Argued: January 23, 2003
                                  Submitted: January 30, 2003
                                  Decided:  April 18, 2003

Filed:

                                  Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1      The Plaintiff, Ned Hardy, brought this action in the United States District Court for the District of Montana to recover damages from the Defendant, Progressive Specialty Insurance Company, pursuant to the policy of insurance it had issued to him. Hardy alleged that he was entitled to recover $150,000 by stacking three $50,000 underinsured motorist coverages for which he paid three separate premiums. Both parties moved for summary judgment and a hearing was held. Following the hearing, the United States District Court certified three questions of law to this Court.

¶2      We accepted the following certified questions of law from the United States District Court:

¶3      1. Is the offset provision in the Progressive policy void in Montana because it violates the public policy of this state?

¶4      2. Given that the Montana Supreme Court has determined that underinsured motorist coverage is personal and portable, is it against public policy in Montana to charge separate premiums for that coverage for separate vehicles insured on the same policy if the insured can only collect one amount of coverage?

¶5      3. Are insurance policies such as the one in question here against public policy in Montana when they include provisions that defeat coverage for which the insurer has received valuable consideration?

¶6      We answer the three certified questions in the affirmative.

2

## FACTUAL AND PROCEDURAL BACKGROUND

¶7    The Plaintiff, Ned Hardy, was injured in an automobile accident on December 26, 2000.  Hardy was riding in a vehicle driven by his wife when their vehicle was negligently struck by a car driven by Gary Marr.  Hardy suffered serious injuries as a result of the accident and recovered $50,000 from Marr's liability insurer.  However, $50,000 was insufficient to compensate Hardy for his injuries.  Consequently, he sought compensation pursuant to the Underinsured Motorist (UIM) coverage he had for three of his vehicles through Progressive Specialty Insurance.

¶8    A separate premium was paid for each of the three $50,000 UIM coverages in Hardy's Progressive policy.  The policy provided in part:

> **INSURING AGREEMENT -**
> **UNDERINSURED MOTORIST COVERAGE**
> Subject to the Limits of Liability, if **you** pay a premium for Underinsured Motorist Coverage, **we** will pay for damages, other than punitive or exemplary damages, which an **insured person** is entitled to recover from the **owner** or operator of an **underinsured motor vehicle** because of **bodily injury**:
> 1.  sustained by an **insured person**;
> 2.  caused by **accident**; and
> 3.  arising out of the ownership, maintenance, or use of an **underinsured motor vehicle**.
>
> **ADDITIONAL DEFINITIONS**
> 2.  "**Underinsured motor vehicle**" means a land motor vehicle or trailer of any type to which a **bodily injury** liability bond or policy applies at the time of the **accident**, but the sum of all applicable limits of liability for **bodily injury** is less than the coverage limit for Underinsured Motorist Coverage shown on the Declarations Page.
> An underinsured motor vehicle does not include any vehicle or equipment . . .
>
> (h) that is an **uninsured motor vehicle**.

3

. . . .

**LIMITS OF LIABILITY**
If **you** or a **relative** are in a **vehicle** which:
1. is involved in an **accident** with an **uninsured motor vehicle** or **underinsured motor vehicle**; and
2. is not a **covered vehicle**;
then the maximum recovery under this policy for any one (1) **accident** shall not exceed the highest dollar benefit limits for any one (1) **covered vehicle**.

If an **insured person** is entitled to similar benefits under more than one (1) motor vehicle insurance policy issued by **us** or an affiliate company, the maximum recovery under all policies shall not exceed the amount payable under the policy with the highest dollar benefit limits. Similar benefits available under more than one (1) motor vehicle insurance policy issued by **us** or an affiliate may not be added together to determine the limits of coverage available under the policies for any one (1) **accident**.

The Limits of Liability shown on the **Declarations Page** for Underinsured Motorist Coverage shall be reduced by all sums:
1. paid because of **bodily injury** by or on behalf of any persons or organizations who may be legally responsible, including, but not limited to, all sums paid under Part I - Liability to Others.

¶9   The declarations page of the policy reflects that Hardy paid separate premiums for UIM coverage of $50,000 per person and $100,000 per accident for each of the three vehicles. A premium of $10 was paid for the coverage of vehicle one, a premium of $8 was paid for vehicle two, and a premium of $9 was paid for vehicle three. Hardy believed the policies could be stacked to aggregate $150,000 of UIM coverage. Progressive denied coverage and Hardy sued for damages in the United States District Court for the District of Montana.

¶10   Progressive raised three arguments in its defense. First, Progressive argued that the tortfeasor's vehicle was not "underinsured" as defined in the policy because the total liability

4

coverage for Marr's vehicle was equal to the highest single UIM coverage limit in Hardy's policy. Second, the policy required Hardy's UIM coverage for one vehicle to be offset by all amounts recovered from the tortfeasor. Hardy recovered $50,000 from Marr's insurer and that amount had to be offset against Hardy's UIM coverage. Finally, Progressive argued that Hardy's UIM coverages could not be "stacked" or aggregated for the purposes of either comparing limits or affording $150,000 of UIM coverage pursuant to the strict language of the policy and Montana law.

¶11 On July 19, 2002, United States District Court Chief Judge Donald W. Molloy submitted a Certified Order to this Court with three certified questions. This Court accepted certification on August 6, 2002. We granted the Montana Trial Lawyers Association (MTLA) and the National Association of Independent Insurers (NAII) leave to appear as *amicus curiae*. Oral argument was held before this Court *en banc* on January 23, 2003.

## ISSUE 1

¶12 Is the offset provision in the Progressive policy void in Montana because it violates the public policy of this state?

¶13 Hardy contends that the policy's definition of underinsured motorist and the tortfeasor offset provision are in conflict with the declarations page of the Progressive insurance policy, which expressly provides for coverage of $50,000. Consequently, he argues that the policy is ambiguous, contravenes the reasonable expectations of the insurance consumer, and violates Montana public policy. Progressive asserts that the policy language is clear and that

5

Hardy is not entitled to recover because the Marr vehicle was not "underinsured" according to the policy definition.

¶14    When we look at an insurance contract for purpose and intent "we [will] examine the contract as a whole, giving no special deference to any specific clause." *Farmers Alliance Mut. Ins. Co. v. Holeman*, 1998 MT 155, ¶ 25, 289 Mont. 312, ¶ 25, 961 P.2d 114, ¶ 25. The terms and words used in an insurance contract are to be given their usual meaning and construed using common sense. *Dakota Fire Ins. Co. v. Oie*, 1998 MT 288, ¶ 5, 291 Mont. 486, ¶ 5, 968 P.2d 1126, ¶ 5. Any ambiguity in an insurance policy must be construed in favor of the insured and in favor of extending coverage. *Holeman*, ¶ 25. An ambiguity exists where the contract, when taken as a whole, is reasonably subject to two different interpretations. *Holeman,* ¶ 25. Whether an ambiguity exists is determined through the eyes of "a consumer with average intelligence but not trained in the law or insurance business." *Holeman,* ¶ 25.

¶15    The Progressive policy declarations page establishes that Hardy paid a separate premium for $50,000 of UIM coverage for three separate vehicles. The language of the Insuring Agreement found on page 17 of the policy states that Progressive will pay for damages "which the insured person is entitled to recover from the owner or operator of an underinsured motor vehicle . . . ." Hardy asserts that the declarations page and the UIM Insuring Agreement indicate that $50,000 of UIM coverage was purchased and is applicable in the event that Hardy was entitled to recover money in excess of the tortfeasor's insurance.

6

¶16 However, according to the UIM definition, coverage is only available if the tortfeasor's liability insurance limit is less than the stated UIM coverage on Hardy's declarations page. Furthermore, UIM coverage does not apply to damages suffered as the result of an accident with an uninsured motor vehicle (UM). Finally, the UIM coverage shown on the declarations page is offset by the amount the insured recovers from the tortfeasor.

¶17 In practically all circumstances the UIM coverage of $50,000 in Montana will be offset by at least $25,000 because of Montana's minimum mandatory coverage requirements. *See* § 61-6-103, MCA. In all cases where the tortfeasor's liability coverage is equal to or more than Hardy's UIM coverage limit, Hardy can recover nothing from the UIM coverage. In any case where the tortfeasor's coverage is less the $25,000, the tortfeasor is uninsured (*See Oleson v. Farmer's Ins. Group* (1980), 185 Mont. 164, 171, 605 P.2d 166, 170) and underinsurance coverage is unavailable pursuant to the terms of the policy.

¶18 Hardy maintains that he had an expectation of coverage when a tortfeasor's insurance provided inadequate indemnity and cites language from this Court's prior cases, the UIM Insuring Agreement, and the declarations page as support for the reasonableness of that expectation. Progressive argues that regardless of those factors, the language of the policy renders Hardy's expectation and argument unreasonable.

¶19 We agree with Hardy's contention that the policy purports to provide $50,000 of coverage when the insured is entitled to damages that exceed that tortfeasor's policy limits. We also agree that the UIM definition and offset provisions preclude Hardy from recovering

7

in this case. Consequently, we conclude that the policy in this case is subject to more than one reasonable interpretation and is, therefore, ambiguous.

¶20 Next, Hardy argues that Progressive's UIM definition and offset provision violate Montana public policy because they contravene the consumer's reasonable expectations, create fraudulent and illusory coverage, and contravene the made whole doctrine.

¶21 Public policy considerations that favor adequate compensation for accident victims apply to UIM coverage in spite of the fact that UIM coverage is not mandatory in Montana. *Bennett v. State Farm Mut. Auto. Ins. Co.* (1993), 261 Mont. 386, 389, 862 P.2d 1146, 1148. The purpose of underinsured motorist coverage is to provide a source of indemnification when the tortfeasor does not provide adequate indemnification. *Bennett*, 261 Mont. at 389, 862 P.2d at 1148; *State Farm v. Estate of Braun* (1989), 243 Mont. 125, 130, 793 P.2d 253, 256. We recognize that *Bennett* and *Braun* are factually distinct from this case and decided different issues. However, the principle that the insurance consumer's reasonable expectation is that UIM insurance provides *additional* coverage when the insured's damages exceed what is available from the tortfeasor, which is expressed in those cases, is applicable to the facts in this case.

¶22 Although we are not bound by its decision, a United States District Court for the District of Montana has held that a similar offset provision and UIM definition violated Montana public policy in *Transamerica Ins. Group v. Osborn* (1986 D. Mont.), 627 F.Supp 1405. The court concluded that the UIM definition and the offset provision contradicted the declarations page and the reasonable expectation of the insured. *Osborn*, 627 F.Supp at

8

1408-409. It stated that the illusory nature of the coverage conflicted with the reasonable belief that the insured purchased $50,000 of additional UIM coverage. *Osborn*, 627 F.Supp 1409. We find that the United States District Court's reasoning in that case is persuasive.

¶23 Progressive argues that *Farmers Alliance Mut. Ins. Co. v. Miller* (1989 9th Cir.), 869 F.2d 509, a case which concluded that a similar provision was valid, should control. In *Miller*, 869 F.2d at 512, the Ninth Circuit stated that *Osborn* robbed the declarations page of any value because it effectively required full disclosure of the UIM provisions on the declarations page. However, we conclude the opposite is true. From a consumer's point of view, a declarations page may be his or her only plain and simple source of information and, if misleading, is of no value. A declarations page which suggests coverage in an amount which is not actually available is misleading. Consequently, we conclude that the *Miller* decision is unpersuasive, and that the UIM definition and offset clause in Hardy's Progressive policy violated Hardy's reasonable expectations.

¶24 Hardy also contends that as a result of the offset provision, $25,000 of coverage for which Progressive received valuable consideration is illusory.

¶25 Progressive responds that it is permitted to exclude coverage for optional insurance such as UIM coverage in light of *Stutzman v. Safeco Ins. Co. of America* (1997), 284 Mont. 372, 945 P.2d 32. However, distinctions in *Stutzman* and the present case limit its applicability. The household exclusion in *Stutzman* was not ambiguous and did not violate public policy. *Stutzman*, 284 Mont. at 380-81, 945 P.2d at 37. We emphasized that a household exclusion was not against public policy and did not violate the consumer's

9

reasonable expectations when "the terms of the insurance policy clearly demonstrate an intent to exclude coverage." *Stutzman*, 284 Mont. at 381, 945 P.2d at 37. We did not hold that exclusions could be accomplished by "bait and switch" tactics.

¶26 In this case, we concluded that the terms of the UIM coverage are ambiguous. We, therefore, conclude that the narrow holding in *Stutzman* is inapplicable to the Progressive policy.

¶27 Progressive also argues that the UIM coverage is not illusory because there are circumstances when the insured can recover more than $25,000 per person. For example, the UIM coverage may exceed $25,000 when the tortfeasor is insured in a state that has lower mandatory liability limits than Montana, or if there are multiple people in Hardy's vehicle attempting to recover from a tortfeasor with insufficient coverage, which is in an amount less that $50,000.

¶28 However, we conclude that these remote examples are not the typical occurrence; will not in most cases provide Hardy with the amount of UIM coverage that he thought he purchased; and are not sufficient to overcome the fact that in nearly all conceivable situations, Progressive's promise to pay up to $50,000 of UIM coverage will not be honored.

¶29 Therefore, in answer to the first certified question, we conclude that the offset provision, as well as the definition of underinsured motorist, violate Montana public policy because they create an ambiguity regarding coverage, render coverage that Progressive promised to provide illusory, and defeat the insured's reasonable expectation.

ISSUE 2

¶30 Given that the Montana Supreme Court has determined that underinsured motorist coverage is personal and portable, is it against public policy in Montana to charge separate premiums for that coverage for separate vehicles insured on the same policy if the insured can only collect one amount of coverage?

¶31 Both Hardy and the MTLA contend that the anti-stacking provision in the Progressive policy violates Montana public policy. They maintain that § 33-23-203, MCA, which authorizes that provision is constitutionally infirm because it violates separation of powers, infringes upon fundamental rights, denies equal protection of the law, and, on its face, violates the right to substantive due process. They contend, therefore, that the public policy of this Court, which prohibits provisions of this nature, must be followed. Progressive and the NAII maintain that § 33-23-203, MCA, is constitutionally valid and that the Progressive policy is consistent with the public policy stated therein.

¶32 As a general rule, the Montana public policy is prescribed by the legislature through its enactment of statutes. *Duck Inn, Inc. v. Montana State Univ.* (1997), 285 Mont. 519, 523-24, 949 P.2d 1179, 1182. Therefore, we must begin our analysis by reviewing Hardy's contention that § 33-23-203, MCA, is not the proper measure of public policy in Montana because it is unconstitutional.

¶33 "[A] party challenging the constitutionality of a statute bears the heavy burden of proving it to be unconstitutional beyond a reasonable doubt." *Estate of McCarthy v. Second Judicial Dist.*, 1999 MT 309, ¶ 13, 297 Mont. 212, ¶ 13, 994 P.2d 1090, ¶ 13. This Court

11

has a duty to interpret the statute in a manner that upholds a constitutional interpretation. *See*

*Estate of McCarthy*, ¶ 13.

¶34 Section 33-23-203, MCA, provides in part:

**Limitation of liability under motor vehicle liability policy**.

(1) Unless a motor vehicle liability policy specifically provides otherwise, the limits of insurance coverage available under each part of the policy must be determined as follows, regardless of the number of motor vehicles insured under the policy, the number of policies issued by the same company covering the insured, *or the number of separate premiums paid*:

. . . .

(c) the limits of the coverages specified under one policy or under more than one policy issued by the same company may not be added together to determine the limits of the insurance coverage or coverages available under the policy or policies for any one accident. [Emphasis added.]

¶35 Article II, Section 17, of the Montana Constitution provides that: "No person shall be denied life, liberty, or property without due process of law." Substantive due process prohibits the state from taking unreasonable, arbitrary or capricious action. *Powell v. State Comp. Ins. Fund*, 2000 MT 321, ¶¶ 28-29, 302 Mont. 518, ¶¶ 28-29, 15 P.3d 877, ¶¶ 28-29. "[A] statute enacted by the legislature must be reasonably related to a permissible legislative objective" to comply with the requirements of substantive due process. *Powell*, ¶ 29.

¶36 Hardy and the MTLA argue that § 33-23-203, MCA, does not withstand the test for substantive due process. Progressive and MAII maintain that § 33-23-203, MCA, is reasonably related to making and keeping insurance premiums affordable for all Montanans.

12

They argue that stacking coverage forces insurers to pay more in claims, which drives the cost of insurance up for everyone.

¶37     While the state may have a legitimate interest in insurance rates, we fail to understand how § 33-23-203, MCA, which allows insurers to charge premiums for non-existent coverage, is rationally related to the stated objective. That contention simply defies logic. The cost to the insurance consumer could not be higher. Charging consumers for non-existent coverage is the antithesis of affordable coverage. Section 33-23-203, MCA, permits the insurance industry to deprive Montanans of their hard earned money for no consideration. There is no legitimate objective for doing so.

¶38     We conclude that § 33-23-203, MCA, is not rationally related to the stated objective of maintaining affordable insurance in Montana, nor any other "permissible legislative objective" that we can imagine, and constitutes an arbitrary and capricious action. Consequently, § 33-23-203, MCA, to the extent that it allows charging premiums for illusory coverage, violates substantive due process and is unconstitutional.

¶39     In the absence a valid legislative enactment of public policy, Progressive's anti-stacking provision must be reviewed in light of the public policy developed by this Court. Hardy contends this Court has consistently held that provisions of this nature violate Montana public policy. Progressive maintains that its anti-stacking provision does not render the additional policies valueless. Specifically, it argues that the premium on the first vehicle provides full coverage for the named insured and his family and the lesser premiums on the

13

second and third vehicles provide secondary coverage for otherwise unprotected passengers in the second and third vehicles.

¶40    In *Bennett*, 261 Mont. at 389, 862 P.2d at 1148, we concluded that a provision that defeats coverage for which valuable consideration has been received violates Montana public policy. We held that UIM coverage, by definition, is personal and portable. *Bennett*, 261 Mont. at 389-90, 862 P.2d at 1148-149. Therefore, a Montanan could reasonably expect coverage up to the aggregate limit of the separate policies when a separate premium for UIM coverage was charged for each. *Bennett*, 261 Mont. at 389-90, 862 P.2d at 1148-149.

¶41    In *Chaffee v. U.S. Fid. & Guar. Co.* (1979), 181 Mont. 1, 591 P.2d 1102, USF&G charged three separate and equal premiums for uninsured coverage on three vehicles insured under the same policy, but similarly limited the insured to recovery of one coverage. We rejected USF&G's contention that the risk involved in extending second class coverage to the second and third vehicles justified the separate premiums. We held that: "There are no added risks to justify the full premium paid on the second and third vehicles." *Chaffee*, 181 Mont. at 6, 591 P.2d at 1104. We concluded that "[a]n attempted reduction of coverage of this kind simply takes the heart out of the policy and erodes the coverage to a point of no value simply because the policy on the first vehicle becomes the only *full* coverage." *Chaffee*, 181 Mont. at 6, 591 P.2d at 1104.

¶42    Based upon the synthesis of *Bennett* and *Chaffee*, we conclude that an anti-stacking provision in an insurance policy that permits an insurer to receive valuable consideration for coverage that is not provided violates Montana public policy. To the extent that the premium

14

charged for the second and third vehicles were disproportionate to the coverage provided, the anti-stacking provisions in Hardy's policy cannot be enforced.

¶43 Here, unlike *Chaffee*, the full premium was not charged for the second and third vehicles. However, nothing in the record before us suggests that charging 80% to 90% of the full-coverage premium for the limited coverage on the second and third vehicle reflects the actual risk willingly assumed.

¶44 Even if it could be shown that it does, the anti-stacking provision still defeats the insured's reasonable expectations. We held that UIM coverage is both personal and portable. *See Bennett*, 261 Mont. at 389-90, 862 P.2d at 1148-149. Progressive's anti-stacking provision destroys the personal and portable nature of UIM coverage by completely relieving Progressive of the obligation to pay damages to the insured.

¶45 We conclude that Progressive's anti-stacking provision belies the insurance consumer's reasonable expectation that he has purchased UIM coverage, which by definition, is personal, portable, and, therefore, stackable. For this reason, we conclude the anti-stacking provision in this case violates Montana public policy.

ISSUE 3

¶46 Are insurance policies such as the one in question here against public policy in Montana when they include provisions that defeat coverage for which the insurer has received valuable consideration?

¶47    Our resolution of the first and second certified questions indicates that an insurance policy that contains provisions that defeat coverage for which the insurer has received valuable consideration is against public policy.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER

Justice Jim Rice, concurring in part and dissenting in part.

¶48    I concur with the Court's holding on Issue 1. A consumer's rightful expectation that the policy provides $50,000 of underinsured motorist "coverage" is defeated by the policy's terms, which limit payment to the amount which is necessary to "fill the gap" between the available liability coverage and $50,000. Here, because liability coverage of $50,000 was available and paid, there was no "gap" to fill, and thus, the entirety of the $50,000 underinsured "coverage" was defeated. Moreover, if there is no liability coverage, the resulting $50,000 gap will not be filled at all, because the policy's definition of an underinsured vehicle excludes vehicles which are uninsured. Consequently, though "$50,000 coverage" is offered to consumers, collection of that amount from the insurer is an assurance

17

which must be considered illusory. In that regard, I find instructive the Idaho Supreme Court's reasoning that insurance coverage is deemed illusory when:

> it appears that if any actual coverage does exist it is extremely minimal and affords no realistic protection to any group or class of injured persons. The declarations page of the policy contains language and words of coverage, then by definition and exclusion takes away the coverage. The fact that there might be some small circumstance where coverage could arguably exist does not change the reality that, when the policy is considered in its entirety, the City was receiving only an illusion of coverage for its premiums. This Court will not allow policy limitations and exclusions to defeat the precise purpose for which the insurance is purchased.

*Martinez v. Idaho Counties Reciprocal Management Program* (Idaho 2000), 999 P.2d 902, 907. As in *Martinez*, it is possible here to conceive of circumstances under which the full $50,000 of underinsured coverage could be paid under the policy, but considered in its entirety, the policy does not fairly provide a consumer with coverage consistent with its representations.

¶49 I respectfully dissent from the Court's holding in Issue 2, as it is founded upon an erroneous factual predicate. In ¶ 37 of the opinion, the Court finds that Progressive has charged a premium for "non-existent coverage," and thus, § 33-23-203, MCA, is without a rational basis and unconstitutional, because the provision "permits the insurance industry to deprive Montanans of their hard earned money for no consideration." These statements are not accurate.

¶50 First, to the extent that underinsured coverage was nonexistent or illusory under this policy, that inadequacy has been remedied by our holding under Issue 1. Pursuant thereto, a full $50,000 in coverage, as represented to the consumer, is now available, in excess of any

liability coverage, for payment of damages sustained by an insured in an accident. There is now nothing which is nonexistent or illusory about that coverage.

¶51 Further, the Hardys insured more than one vehicle and more than one driver under the policy. Additional premiums of $8 and $9 were assessed by Progressive for underinsured coverage on the Hardys' second and third vehicles to underwrite the costs associated with the additional risks Progressive was undertaking on these vehicles. Those additional risks were unrelated to the personal and portable nature of underinsured coverage for the policyholders. Rather, the additional risk is posed by the potential passengers, unnamed under the policy, who could be victims of accidents in those vehicles. The terms of the underinsured coverage specifically define "insured person" more broadly in order to provide coverage to those unnamed passengers. Thus, if the Hardys were involved in separate accidents while carrying passengers, additional claims reasonably could arise beyond those which would be made by the Hardys themselves, and beyond the coverage provided on a single vehicle, providing a legitimate reason for the premium adjustment, and valid consideration for the premiums paid.

¶52 In fact, at oral argument, Hardy's counsel acknowledged that had Progressive charged a combined policy premium for this coverage, instead of separate premiums for each vehicle, his claim on this issue would be essentially eliminated. Given the *de minimus* nature of Hardy's objection, and the valid basis for charging a separate premium, it is completely unnecessary for the Court to engage in a constitutional analysis and declare § 33-23-203, MCA, to be invalid. I dissent from the Court's decision to do so.

¶53     I concur with the Court's conclusion on Issue 3, finding that issue was subsumed within the holding on Issue 1.

/S/ JIM RICE

Chief Justice Karla M. Gray joins in the foregoing concurring and dissenting opinion of Justice Rice.

/S/ KARLA M. GRAY