JUSTICE REGNIER
dissenting.
¶24 The Court has declined to answer Judge Molloy’s first certified question for the reason that it finds the second certified question dispositive. I respectfully dissent from the majority’s holding on the second certified question and from its resulting refusal to address the first certified question.
¶25 The majority concludes that the clear, unambiguous language of the “no coverage” provision precludes Lierboe from recovering under both policies. The Court states:
Ruckdaschel does not apply in this case because Lierboe’s accident in her Jeep was covered by only a single policy. Therefore, there was no second covering policy to stack. No stacking issue exists unless there are multiple policies which actually cover the *389 accident in question.
Lierboe, ¶ 18. I believe the ambiguity argument is a red herring which has distracted the majority from a more fundamental consideration, i.e., the majority subscribed to the provision’s preclusive effect without addressing the permissibility of the prohibition. After all, clarity itself cannot resurrect an otherwise impermissible insurance provision. Therefore, in my estimation, the appropriate inquiry is whether the “no coverage” provision constitutes an anti-stacking provision, rendering it void as against public policy pursuant to Hardy v. Progressive Specialty Ins. Co., 2003 MT 85, 315 Mont. 107, 67 P.3d 892, and its predecessors.
¶26 The concept of stacking “arises where the same claimant and the same loss are covered under multiple policies, or under multiple coverages contained in a single policy, and the amount available under one policy is inadequate to satisfy the damages alleged or awarded.” 12 Couch on Insurance 3d, § 169:4 (1998). Thus, we must first determine the coverage issue per Judge Molloy’s first certified question. If Lierboe does not constitute an insured under the Shining Mountain policy, we need not address the validity of her medical pay claim and corresponding stacking issue.
¶27 The stipulated facts indicate that Shining Mountain is a closely held corporation in which Lierboe owns an interest. Obviously, corporations are “persons” only to the extent as defined by statute. Yet, the policy issued by State Farm references “relatives,” “person,” “medical and funeral expenses,” and “bodily injury.” It goes without saying that corporations do not suffer bodily injuries, incur medical expenses, or maintain “relatives.” Thus, if the policy did not intend to extend coverage to shareholders, principals, and other affiliated individuals, why did State Farm include the personifying terms in a corporate policy?
¶28 Section 33-15-337, MCA, requires that casualty policies utilize simple, clear, and understandable language. Similarly, this Court has consistently construed ambiguous policy provisions against the policy’s drafter, the insurer, and in favor of coverage. Wellcome, 257 Mont. at 356, 849 P.2d at 192. Finally, the determination of coverage often hinges on the reasonable expectation of the person purchasing the policy-what is objectively reasonable to the average person controls. See St. Paul Fire and Marine Ins. Co. v. Thompson (1967), 150 Mont. 182, 187, 433 P.2d 795, 798; Leibrand v. Nat. Farmers Union (1995), 272 Mont. 1, 898 P.2d 1220.
¶29 With these principles in mind, the word “relatives” must apply to *390 individuals closely associated with the insured corporation. Such an interpretation must prevail to accord meaning to the policy. As stated above, a corporate entity cannot suffer “bodily injury” or incur “medical or funeral” expenses. Is it then patently unreasonable for an average person to expect personal protections from a corporate policy which uses the above terminology when the individual pays the corresponding premiums? I think not.
¶30 I agree with the late United States District Court Judge Paul Hatfield’s determination on the issue in Hager v. American West Ins. Co. (D.Mont. 1989), 732 F.Supp. 1072. Hager involved an uninsured motorist claim with respect to a shareholder of a closely held corporation. The shareholder, a pedestrian, was struck by a hit and run driver in a parking lot. Judge Hatfield concluded that closely held corporations had clearly identifiable officers and shareholders and when corporate insurance policies include language such as “family member,” it is only reasonable to conclude that the readily identifiable officers and shareholders fall within the purview of that terminology. Hager, 732 F.Supp. at 1075. Judge Hatfield further concluded that the use of “family member” in a closely held family corporation policy created an ambiguity. “A construction of the term based upon the conclusion that a corporation cannot have ‘family members’ in the literal sense, would directly contravene the mandate of Montana law requiring the ambiguity to be construed against the defendant.” Hager, 732 F.Supp. at 1075. Likewise, when State Farm utilized similar terms in its policy, it, at the very least, created an ambiguity which we must construe in favor of Lierboe and against State Farm. Accordingly, I conclude that Lierboe was an insured under the Shining Mountain policy.
¶31 Since Lierboe was covered under multiple policies, we must examine the purported exclusivity effect of the “no coverage” provision. Admittedly, the provision at issue contains different language and contemplates a scenario somewhat unlike the traditional uninsured and underinsured anti-stacking analyses. Yet, the provision operates against insureds in virtually the same manner. Without the provision, we have one claimant covered for the same loss, medical expenses derived from bodily injury, under two separate policies for which State Farm received independent premiums. Despite the provision’s slightly unique language, the majority’s characterization of the provision as a “coverage” provision versus a “stacking” provision, and the purportedly significant distinction between Ruckdaschel and Chilberg (a distinction simply grounded in semantics), the “no coverage” provision’s *391 implications compel one conclusion-it is an anti-stacking provision.
¶32 In fact, the authority cited in support of the majority’s conclusion acknowledges this reality-the above provision “unambiguously rejects stacking.” Sanchez, 783 P.2d at 470. Furthermore, numerous other jurisdictions treat virtually the same “no coverage” provision as an anti-stacking provision. See Miletello v. State Farm (La. Ct. App. 1990), 566 So.2d 676, 679; State Farm Mut. Auto. Ins. Co. v. Scitzs (Miss. 1981), 394 So.2d 1371, 1374; Hempen v. State Farm Mut. Auto. Ins. Co. (Mo. 1985), 687 S.W.2d 894, 895; Keiper v. State Farm Mut. Auto. Ins. Co. (W. Va. 1993), 429 S.E.2d 66, 70.
¶33 Admittedly, these other jurisdictions reach the same result as that propounded by the majority. However, the fact that these jurisdictions prohibited the attempted stacking maintains no relevance to this case. For, once we establish that the “no coverage” provision is an anti-stacking provision, we must look to Montana law for guidance. If the applicable state law sanctions the use of anti-stacking provisions, the majority’s determination garners additional support. Such is not the case here.
¶34 In Bennett, 261 Mont. at 389, 862 P.2d at 1148, we concluded that a provision which defeats coverage for which valuable consideration has been received violates Montana public policy. We have embraced this principle for the past twenty-five years and, yet again, recently reaffirmed its continued viability. See Hardy, ¶ 42 (“[A]n anti-stacking provision in an insurance policy that permits an insurer to receive valuable consideration for coverage that is not provided violates Montana public policy.”). Significantly, Hardy drew no distinction between uninsured/underinsured anti-stacking provisions and the one contemplated herein. Hardy simply declared any anti-stacking provision that precludes coverage for which an insurer received valuable consideration void as against public policy. Therefore, Hardy and its predecessors, without equivocation, render the “no coverage” provision void.
¶35 The majority attempts to distinguish our prior precedent on this issue. It claims that Bennett and Ruckdaschel do not apply because, there, the insured was covered by multiple policies and once the anti-stacking clause was struck down, the insured was entitled to stack the policy limits. Conversely, the majority contends that the “no coverage” provision at bar precludes coverage if the accident occurred in an owned vehicle not insured under the policy in question. With all due respect, I fail to see the distinction.
¶36 Medical pay coverage is triggered upon realization of the operative *392 event, sustained bodily injury. The coverage contemplates bodily injury irrespective of vehicular occupancy. See 12 Couch on Insurance 3d, § 169:103 (1998) (“Medical payments insurance is a ‘non-fault’ type of insurance, to the extent that it is not dependent on the car in use at the time of the accident; it is not attributable to a specific automobile.”). Therefore, the “no coverage” provision directly contravenes the fundamental intent of medical pay coverage.
¶37 In my estimation, this is simply another clever attempt by the insurance industry to assess premiums for unattainable coverage. In the final analysis, I see no difference between this and what we declared against public policy for the past twenty-five years.
¶38 Since Lierboe constitutes an insured under both of the applicable policies, and since the “no coverage” provision is void as a matter of public policy, Lierboe should be entitled to recover her respective medical expenses under each policy. I would answer both of Judge Mollo/s certified questions in the affirmative and respectfully dissent from the majoritys failure to do so.
JUSTICE NELSON joins in the foregoing dissent.