**PROGRESSIVE CASUALTY INSURANCE COMPANY, Plaintiff,**

v.

**Arlene OWEN, Defendant.**

**No. CV 05–16–BU–RWA.**

United States District Court,
D. Montana.
Butte Division.

May 26, 2006.

Jessica L. Weltman, Robert J. Phillips, Timothy S. Peck, Phillips & Bohyer, Missoula, MT, for Plaintiff.

Robert G. McCarthy, McCarthy Law Office, Butte, MT, for Defendant.

## ORDER

ANDERSON, United States Magistrate Judge.

The parties have filed cross motions for summary judgment in this action concerning underinsured motorist and medical benefits under a commercial insurance policy. Having considered the briefs of the parties and the materials on file in the record, the Court is prepared to rule.[1]

## BACKGROUND

At the time of the accident in question, defendant, Arlene Owen, was the vice-president, secretary, and a director of Bennett Owen Trucking, Inc. (hereinafter Owen Trucking), a corporation whose sole shareholders were Arlene and her ex-husband, Curtis Owen. Owen Trucking insured 12 vehicles, which included dump trucks, tractors, and dump trailers, under a commercial policy issued by plaintiff, Progressive Casualty Insurance Company. The declarations pages, which are expressly made a part of the policy,[2] listed the

---

1. Pursuant to 28 U.S.C. § 636(c) and the written consent of the parties, this case has been assigned to the undersigned United States Magistrate Judge for all proceedings, including trial and entry of judgment, by order of United States District Judge Richard F. Cebull dated May 3, 2005.

2. "This Declarations Page/Amended Declaration Page with the policy jacket identified by the form and addition indicated completes the above numbered policy." Def's Response and Reply Brief, Ex. 1 at 1.

named insured as BENNETT OWEN-TRUCKING I. The declarations also listed 10 drivers,[3] none of which included Arlene. In fact, Arlene's name appeared nowhere on the declarations pages or the policy itself. The policy did not address coverage for officers or directors or owners or employees. It was wholly silent on those matters.

Although Arlene worked only part-time in the Owen Trucking office, she decided in November 2003 that it would be beneficial to the business if she were to begin driving commercial vehicles. To that end, she obtained her commercial learner's permit from the State of Montana and, over the next few months, obtained experience driving company vehicles with her ex-husband, Curtis.

The accident that forms the basis of the present controversy occurred on Sunday, February 29, 2004. At that time, Arlene, with Craig Cornell as a passenger, drove Cornell's semi-truck and flatbed trailer to property located near Dillon, Montana, to pick up some hay bales. When they reached their destination, Arlene assisted Cornell in loading and tying down the hay, climbing on and off the truck and trailer as she did so. Arlene intended to drive the truck after it was loaded; however, at some point, while she was standing approximately 15 feet from the semi, the loaded hay shifted and a hay bale fell on her, causing serious, disabling injuries.

Cornell's vehicle was not insured under the Owen Trucking policy nor was Cornell employed by Owen Trucking at the time of the accident. Arlene attests, nevertheless, that she drove the vehicle for the purpose of learning to drive and load a large semi-truck similar to those used by Owen Trucking. She attests that she drove Cornell's vehicle as a substitute for an Owen Trucking vehicle because more than one of the trucking company's vehicles was broken down, in for repairs, or being serviced that day.[4]

Arlene recovered $862,000 in bodily injury payments from the insurer of Cornell's semi-truck. She also received the $100,000 limits of her underinsured motorist (UIM) coverage under her personal automobile insurance policy. She then made a claim with Progressive for UIM and medical benefits under the Owen Trucking policy. In response, Progressive filed this action seeking a declaration that the insurance policy does not provide coverage for the accident.

## DISCUSSION

Because this is a diversity case, the Court applies the law of Montana in construing the policy of insurance. *Hanson v. Employers Mut. Casualty Co.*, 336 F.Supp.2d 1070, 1073 (D.Mont.2004) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). Under Montana law, the terms of an insurance policy govern if they are clear and explicit. *Id.* Any ambiguities in the policy are "construed in favor of the insured, and in favor of extending coverage." *Mitchell v. State Farm Ins. Co.*, 315 Mont. 281, 68 P.3d 703, 709 (2003). An ambiguity exists where the contract, "taken as a whole, is reasonably subject to two different interpretations." *Id.* However, if the "language of an insurance policy admits of only one meaning, there is no basis for interpretation of the policy coverage under the guise of ambigu-

---

**3.** The drivers are described in the declarations sheet, however, as "described vehicles." *Id.* at 2.

**4.** Curtis disputes both that Arlene was learning to drive commercial vehicles for the bene-fit of Owen Trucking and that she was driving Cornell's vehicle because those of Owen Trucking were out of service. Due to the discussion *infra*, these disputes are not material.

ity." *Shook v. State Farm Mut. Ins. Co.,* 872 F.Supp. 768, 773 (D.Mont.1994).

■ If an ambiguity exists, the Court may consider the reasonable expectations of the insured. *Id.* Under this doctrine, the objectively reasonable expectations of insurance purchasers about the terms of their policies should be honored even if a painstaking study of the policy would negate those expectations. *Hanson,* 336 F.Supp.2d at 1075.

Having read and reread Progressive's policy, the Court finds that, taken as a whole, the contract is ambiguous, at least when it comes to UIM and medical benefits. The ambiguity begins with the fact that the policy is issued to a corporation, Owen Trucking, which is the only named insured. The policy makes no explicit provision for coverage for owners, directors, or officers of the company. In fact, the policy makes no reference to these individuals at all.

■ The Montana Supreme Court has often observed that "UIM coverage, by definition, is personal and portable." *Hardy v. Progressive Specialty Ins. Co.,* 315 Mont. 107, 67 P.3d 892, 899 (2003) (citing *Bennett v. State Farm Mut. Auto. Ins. Co.,* 261 Mont. 386, 862 P.2d 1146, 1148–49 (1993)). Despite this pronouncement by the state's highest court, Progressive has sold a policy that lists a corporation as the only named insured and that at the same time, and on the same declarations page, states that the policy provides (and indeed charges separate premiums for) UIM and medical coverages—benefits that are impossible for the corporate named insured to collect. A corporation cannot suffer bodily injury; it cannot obtain medical treatment; it cannot incur medical bills. Yet these are conditions precedent to the collection of benefits under the UIM and medical coverages.[5]

Thus, it would be reasonable to expect that a commercial policy that purports to provide uniquely human benefits must have intended to extend those benefits to some person or persons. The question is who? Where, as here, an exact answer is totally impossible to discern from the shifting provisions of the policy, it would be reasonable to expect that the individuals covered for these benefits would include, at a minimum, the owners, officers, and directors of the corporation. Certainly no express policy provision excludes them.

To reach any other result would permit Progressive to issue coverage to corporate named insureds and to charge premiums for those coverages when in fact, the named insured could never collect. Such a result would allow the insurer to sell illuso-

---

**5.** The UIM endorsement sets out the elements for coverage as follows:

Subject to the Limits of Liability, if **you** pay the premium for Underinsured Motorist Coverage, **we** will pay for damages, other than punitive or exemplary damages, which an **insured** is legally entitled to recover from the owner or operator of an **underinsured auto** because of **bodily injury**:

1. Sustained by an **insured**.
2. Caused by an **accident**.
3. Arising out of the ownership maintenance or use of an **underinsured auto**.

Def's Response and Reply Brief, Ex. 3 at 17. Similarly, the medical payment coverage provides:

This coverage is subject to the limits of liability. If **you** pay the premium for this coverage, **we** will pay the **usual and customary** charge for **reasonable** and necessary expenses. These expenses must be incurred within three (3) years from the date of an **accident**. These expenses for medical and funeral services must be because of **bodily injury**:

1. Sustained by an **insured**.
2. Caused by an **accident**.
3. Arising out of the ownership, maintenance and use of an **auto**.

*Id.* at 8.

ry coverage in violation of the public policy of the State of Montana. "An insurer may not place in an insurance policy a provision that defeats coverage for which the insurer has received valuable consideration." *Bennett,* 862 P.2d at 1148; *Ruckdaschel v. State Farm Mut. Auto. Ins. Co.,* 285 Mont. 395, 948 P.2d 700, 702 (1997); *Hardy,* 315 Mont. 107, 67 P.3d 892.

The Court realizes, in a sense, that by holding that the named insured must at least include corporate shareholders, officers, and directors, the Court is rewriting the policy. But the Court has no other choice. The document is so poorly constructed and confusingly written, replete with conflicting definitions of insured, named insured, and "you," and cross references with no set of definitions being complete within each individual coverage, that it is impossible to understand.

To illustrate the confusing, convoluted manner in which the policy is written, the Court examines some of the pertinent provisions. First, the policy begins with a definitions section that provides:

**DEFINITIONS: WORDS AND PHRASES WITH SPECIAL MEANING**

The following words and phrases have special meaning when used throughout this Policy and, *unless specifically modified,* in the endorsements:

Def's Response and Reply Brief, Ex. 3 at 4 (italics added).

Thus, even the definition of "definitions" is equivocal. It informs the insured that it cannot rely on any single definition and that, even though a term is found in the definitions section, that definition may not apply to any particular coverage.

The definitions section then goes on to define the word "**you:**"

"**You**" and "your" mean the person or organization shown in the Declarations as the named **insured.**

*Id.*

Then, "insured" is defined as follows:

"**Insured**" means any person or organization qualifying as an **insured** under the coverage wording of each separate coverage section of this Policy.

*Id.* at 4.

▮ Consequently, there is no single definition of "insured." Instead, who or what is an "insured" changes with each type of coverage.[6] Only the named insured—the corporation—remains a constant.

Nevertheless, in an attempt to ascertain who is an insured for purposes of UIM coverage, the Court turns to the applicable endorsement. As noted previously, in the UIM endorsement Progressive agreed to pay damages

which an **insured** is legally entitled to recover from the owner or operator of an **underinsured auto** because of **bodily injury:**

1. Sustained by an **insured.**

2. Caused by an **accident.**

---

**6.** The court confronted a similar problem in *Hanson,* 336 F.Supp.2d 1070, where the policy defined "you" differently for UIM and med-pay coverages. The court observed that "an ambiguity exists when 'the contract taken as a whole in its wording or phraseology is reasonably subject to two different interpretations.'" *Id.* at 1077 (quoting *Farmers Alliance Mut. Ins. Co. v. Holeman,* 289 Mont. 312,

961 P.2d 114, 119 (1998)). Reading the policy as a whole, the court held that it was impossible to reconcile the two different interpretations of the term "you."

So too, here, it is not possible to read the policy as a whole and to reconcile the separate UIM and med-pay coverages with the declarations page.

3. Arising out of the ownership, maintenance or use of an **underinsured auto.**

*Id.* at 17.

An insured, for purposes of UIM benefits, is defined as follows:

2. **"Insured"** means:

   a. If the named insured is a person:

     i. **You** or a **relative.**

     ii. Any other person **occupying your insured auto.**

     iii. Any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person in i. or ii. above.

   b. If the named insured is a corporation, partnership, organization, or any other entity that is not a living person:

     i. Any person **occupying your insured auto.**

     ii. Any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person described in i. above.

*Id.* at 18.

So, for purposes of UIM coverage, the definition of insured depends on whether the named insured is a corporate entity or an individual. If, as Progressive insists, the only named insured in this case is a corporate entity, the Court is then forced to return to the definitions section to determine the meaning of the terms "occupying" and "your insured auto." The term "occupying" causes no real dilemmas (other than the fact that a corporation cannot occupy, get into, or out of an automobile),

but "your insured auto" includes the following definition for temporary substitute autos, which is the provision that would apply to Cornell's semi-truck in this case (if it were possible to coherently construe the policy):

10. **"Your Insured Auto"** means:

   .    .    .    .    .

   c. Any **auto** not owned by **you** while **you** are temporarily driving it as a substitute for any other **auto** described in this definition because of its withdrawal from normal use due to breakdown, repair, servicing, **loss,** or destruction. . . .

*Id.* at 4.

This definition makes no sense if the only named insured is a corporate entity, because it applies to "[a]ny auto not owned by **you** [named insured, *i.e.,* the corporation] while **you** [named insured, *i.e.,* corporation] are temporarily driving it . . . ." Obviously, a corporation cannot drive an auto. That activity can only be accomplished by an individual. By its very terms, the definition of a temporary substitute auto necessitates that the named insured be human.

Simply put, it is impossible to read and understand this policy by examining individual coverages. Therefore, attempting to read this policy as a whole, and even though it has separate coverages, the Court can come to no conclusion other than to add human named insureds as to those coverages that, by their very nature, can only apply to humans. Only people can occupy vehicles, drive autos, suffer bodily injuries, receive medical treatment, and incur charges for medical care, all preconditions to UIM and medical benefits.

Progressive cannot charge premiums for UIM and medical benefits and then claim that the owners, officers, and directors of a corporation are not covered for these benefits because the only named insured is a corporation. Arlene Owen could have reasonably expected that as a 50% owner, vice-president, secretary, and director of Owen Trucking she would be covered for UIM and medical benefits under the Progressive Policy issued to the corporation. Those reasonable expectations cannot be defeated by this poorly drafted and nonsensical insurance contract.

## ORDER

In accordance with the foregoing, **IT IS ORDERED:**

1. Progressive's motion for summary judgment (doc. 14) is denied.

2. Defendant's cross motion for summary judgment (doc. 22) is granted.

3. The Court hereby declares that the Progressive policy of insurance issued to Owen Trucking provided UIM and medical payments coverage for Arlene Owen for injuries she sustained on February 29, 2004.

The Clerk of Court shall forthwith enter judgment accordingly.