JUSTICE COTTER
dissents.
¶74 I respectfully dissent from the Court’s holding under Issue 4B. I can accept the Court’s decision to apply the conflict of laws analysis from § 187(2)(b) of the Restatement to determine if Montana law should apply to the insurance policy in this case. (Opinion, ¶ 54.) However, I disagree with the conclusion that Montana’s interest in the dispute before use is not “materially greater” than Ohio’s.
¶75 The Court correctly notes that the Nationwide insurance contract states that Ohio law will apply. Thus, under § 187(2)(b) of the Restatement, Ohio law will apply unless the following three factors are met: (1) if, but for the choice-of-law provision in the contract, Montana law would apply under § 188 of the Restatement-, (2) if Montana has a materially greater interest in the particular issue than the state chosen by the parties; and (3) if applying the state law chosen by the parties would contravene a fundamental policy of Montana. (Opinion, ¶ 54.) The Court easily concludes that factor (1) is satisfied in favor of Montana, and I agree with its analysis.
¶76 Under factor (2), however, the Court concludes that Montana does not have a “materially greater interest” in this dispute, and thus concludes that Ohio law will apply. I disagree with this conclusion and the Court’s analysis. The Court follows Keystone, Inc., and begins its analysis under factor (2) by noting that the determination of whether Montana has a materially greater interest than Ohio will depend on an analysis on the contacts described in § 188(2) of the Restatement. (Opinion, ¶ 59.) If an analysis under these contacts shows that Montana has a materially greater interest than Ohio’s, then Montana law would presumably apply to override the contractual provision choosing Ohio law. These contacts include the following: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties. In its analysis, the Court concludes that all of the factors are either neutral or of little weight; thus, Montana’s interest is not materially greater than Ohio’s.
¶77 While I understand the Court’s strict application of the § 188(2) factors to determine whether Montana has a materially greater interest in this dispute has its genesis in our decision Keystone, Inc., I think we should be wary of a reflexive and rote application of those *284 factors to determine which state has materially greater interest in the dispute before us. In the first instance, I would bring to the Court’s attention that in Keystone, Inc., we continued the practice of merging the “materially greater interest” inquiry with a somewhat mechanical application of the § 188(2) factors without any analysis or explanatory rationale-a practice which is inconsistent with the plain language of the Restatement itself, which posits the “materially greater interest” inquiry as separate and apart from the § 188(2) factors analysis. (See ¶ 54 of the Opinion for text of § 187(2)(b)). In Ticknor v. Choice Hotels Intl, Inc., 265 F.3d 931 (9th Cir. 2001), the Ninth Circuit noted this anomaly in our application of § 187(2)(b) of the Restatement when it was called upon to apply Keystone, Inc. in analyzing a choice-of-law question under Montana law. The Ninth Circuit noted: “Montana courts conflate the latter two inquiries [under § 187(2)(b)] and find that whichever state has a materially greater interest under § 188 is also the state whose law would apply absent an effective choice of law provision.” Ticknor, 265 F.3d at 937. In my judgment, the fact that the Ninth Circuit has recognized this anomaly in our application of § 187(2)(b) of the Restatement should give us pause before we perpetuate this practice further.
¶78 I would further suggest that the Keystone, Inc. approach of merging these two inquiries is out of step with the vast majority of jurisdictions which have analyzed the “materially greater interest” question under § 187(2)(b). In Blalock v. Perfect Subscription Co., 458 F. Supp. 123 (S.D. Ala. 1978), affd 599 F.2d 743 (5th Cir. 1979), for instance, an Alabama federal district court applied § 187(2)(b) of the Restatement to consider whether an express contractual provision to apply Pennsylvania law in an employment agreement would be enforced in Alabama. In that case, the employment agreement contained a covenant against competition which was permitted under Pennsylvania law, but expressly forbidden by statute in Alabama. Blalock, 458 F. Supp. at 126-27. The federal district court looked to § 187(2)(b) to resolve the question of which state’s law should apply, and concluded that Alabama had a “materially greater interest” in determining the issue than Pennsylvania, even in the face of an express contractual provision to apply Pennsylvania law. Blalock, 458 F. Supp at 127; see also Benchmark Med. Holdings, Inc. v. Rehab Solutions, LLC, 307 F. Supp. 2d 1249, 1260 (M.D. Ala. 2004).
¶79 In Barnes Group, Inc. v. C & C Prods., Inc., 716 F.2d 1023 (4th Cir. 1983), the Fourth Circuit reached a similar conclusion under § 187(2)(b) in considering whether to apply Ohio law to the *285 interpretation of multi-state employment agreements which expressly called for the application of Ohio law. In that case, an Ohio-based company (Bowman, Inc.), which sold fungible parts used in the production and repair of vehicles and machinery, contracted with salesmen in a variety of states, including Alabama, Louisiana, Maryland, and South Carolina, to sell its products there. Barnes Group, Inc., 716 F.2d at 1026-27. The contracts all had restrictive covenants, which were permitted under Ohio law, forbidden in Alabama, but allowed under some circumstances in Louisiana, Maryland, and South Carolina. Barnes Group, Inc., 716 F.2d at 1031-32. Another company subsequently hired some of Bowman, Inc.’s salesmen, and Bowman, Inc. sued the company in Ohio federal district court based on the restrictive covenants contained in the agreements. Barnes Group, Inc., 716 F.2d at 1027. The Fourth Circuit was called upon to decide which state’s law should apply to the dispute. The Fourth Circuit applied § 187(2)(b) of the Restatement to resolve this question, noting that
A basic principle under contemporary choice-of-law doctrine is that parties cannot by contract override public policy limitations on contractual power applicable in a state with materially greater interests in the transaction than the state whose law is contractually chosen. See Restatement (Second) of Conflicts § 187(2)(b) (1971). While contemporary doctrine recognizes a sphere of party autonomy within which contractual choice-of-law provisions will be given effect, it also limits the extent to which deft draftsmanship will be allowed to bypass legislative judgments as to basic enforceability or validity. This is implicit in the Restatement (Second) of Conflicts § 187(2)(b), which provides that a contractual choice-of-law clause will not be given effect on matters such as “capacity, formalities and substantial validity,” id. comment d, when application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which ... would be the state of the applicable law in the absence of an effective choice of law by the parties.
Barnes Group, Inc., 716 F.2d at 1029 (footnotes and other citations omitted).
¶80 In assessing the interests of the various states involved, the Fourth Circuit noted that Maryland, Louisiana, South Carolina and Alabama all had “interests at two levels in applying their own law on *286 the enforceability of restrictive covenants: to protect employee-residents from contractually abrogating their ability to earn a livelihood, and to control the degree of free competition in the local economy.” Barnes Group, Inc., 716 F.2d at 1030. The Fourth Circuit concluded that the interests of these states “in regulating business relationships with the states outweigh any generalized interest Ohio might have in applying its own law to protect the interstate contracts of its domiciliary . . . .” Barnes Group, Inc., 716 F.2d at 1030.
¶81 Another case I find instructive in this regard is DeSantis v. Wackenhut Corp., 793 S.W.2d 670 (Tex. 1990). There, the Texas Supreme Court considered whether to apply Texas or Florida law to enforce a covenant not to compete between Wackenhut Corporation (an entity which provides security services throughout the United States) and its former employee, Edward DeSantis; Florida law permitted the enforcement of such covenants, while Texas law did not. In that case, DeSantis resigned from Wackenhut after working there for three years, and then formed a rival company called Risk Deterrence, Inc. (RDI). DeSantis, 793 S.W.2d at 675. Wackenhut subsequently sued DeSantis under the restrictive covenant, and DeSantis sought to have Texas law govern the interpretation of the contract, in spite of the express provision to apply Florida law. DeSantis, 793 S.W.2d at 676-77. The Texas Supreme Court applied § 187(2)(b) of the Restatement test and concluded that Texas’ interest in the matter was materially greater than Florida’s. In reaching this conclusion, the Texas Supreme Court reasoned as follows:
Texas has a materially greater interest than does Florida in determining whether the noncompetition agreement in this case is enforceable. At stake here is whether a Texas resident can leave one Texas job to start a competing Texas business. Thus, Texas is directly interested in DeSantis as an employee in this state, in Wackenhut as a national employer doing business in this state, in RDI as a new competitive business being formed in the state, and in consumers of the services furnished in Texas by Wackenhut and RDI and performed by DeSantis. Texas also shares with Florida a general interest in protecting the justifiable expectations of entities doing business in several states. Florida’s direct interest in the enforcement of the noncompetition agreement in this case is limited to protecting a national business headquartered in that state. Although it is always problematic for one state to balance its own interests fairly against those of another state, the circumstances of this case leave little doubt, if *287 any, that Texas has a materially greater interest than Florida in deciding whether the noncompetition agreement in this case should be enforced.
DeSantis, 793 S.W.2d at 679; see also O’Brien v. Shearson Hayden Stone, Inc., 586 P.2d 830, 833-34 (Wash. 1978); Stickney v. Smith, 693 F.2d 563, 565 (5th Cir. 1982).
¶82 The comments to the Restatement, upon which the Court has placed some weight (Opinion, ¶¶ 60-62), do not commend the approach employed by the Court in this case, but instead exhort reviewing courts to look primarily to their own legal principles when determining whether one state has a materially greater interest than another. “The forum will apply its own legal principles in determining whether a given policy is a fundamental one within the meaning of the present rule and whether the other state has a materially greater interest than the state of the chosen law in the determination of the particular issue.” Restatement (Second) of Conflict of Laws § 187 cmt. g (emphasis added). Thus, there is no reason to assume, as the Court does, that a mechanical application of the § 188(2) factors is contemplated by the Restatement itself, given that the choice-of-law rules contained in the Restatement “do not themselves determine the rights and liabilities of the parties, but rather guide decision as to which local law rule will be applied to determine these rights and duties.” Restatement (Second) of Conflict of Laws § 2 cmt. a(3). While the prime objective of the § 188(2) factors analysis is to ensure that the justified expectations of the contracting parties are protected, the Restatement comments also clearly contemplate that the various interests of the forum states are always to be balanced against these justified expectations.
Parties entering a contract will expect at the very least, subject perhaps to rare exceptions, that the provisions of the contract will be binding upon them. Their expectations should not be disappointed by application of the local law rule of a state which would strike down the contract or a provision thereof unless the value of protecting the expectations of the parties is substantially outweighed in the particular case by the interest of the state with the invalidating rule in having this rule applied.
Restatement (Second) of Conflict of Laws § 188 cmt. b (emphasis added).
¶83 In her dissent in Ohayon v. Safeco Ins. Co. of Ill., 747 N.E.2d 206 (Ohio 2001), Justice Resnick of the Ohio Supreme Court referred to some of these sections from the Restatement in making the argument that a rote application of the § 188(2) factors makes little sense in the *288 context of UIM coverage issues. Justice Resnick concluded that an application of the Restatement’s choice-of-law principles in the context of UIM coverage issues should lead reviewing courts to consider “the adhesory, ambulatory, and portable nature of automobile insurance contracts and coverage. The court must also consider whether the interests of the state with the invalidating rule in having its rule applied outweigh the insurer’s expectation that the contractual provision at issue will be binding upon the parties.” Ohayon, 747 N.E.2d at 226 (Resnick, J., dissenting). I believe this is the approach that the comments to the Restatement actually commend, and the one that should be followed in this case.
¶84 I would also argue that the Court’s analysis with respect to the “place of performance” under the § 188(2) factors, is not necessarily supported by the comments themselves. The Court begins its analysis under this factor by correctly concluding that Montana is, in fact, the place of performance of Nationwide’s insurance contract. (Opinion, ¶ 62.) This conclusion is consistent with our holding in Mitchell. The Court then observes that this contact would normally be accorded significance because “such a state ‘has an obvious interest in the nature of the performance and in the party who is to perform.’ ” (Opinion, ¶ 62 (quoting Restatement (Second) of Conflict of Laws § 188 cmt. e). The Court then cautions as follows: “[t]he comments [to the Restatement] offer the caveat, however, that the place of performance bears little weight in choice-of-law determinations when the place of performance is uncertain or unknown at the time of contracting.” (Opinion, ¶ 62, citing Restatement (Second) of Conflict of Laws § 188 cmt. e). Accordingly, the Court concludes that this factor is accorded little weight because “Montana’s status as the place of performance was uncertain or unknown at the time of contracting.” (Opinion, ¶ 62.) This leads the Court to then conclude that Montana’s interest in this dispute is not materially- greater than Ohio’s, and that Ohio law will apply.
¶85 I have two problems with Court’s analysis of this specific issue. First, based on my reading of the comments, and not just one small snippet of them, I do not believe that comments in the Restatement, without any other case citations, should constitute the be-all and end-all of our analysis and discussion. The comments can certainly provide courts with invaluable guidance when they are confronted with difficult questions for which no clear precedent exists. However, the comments are not authoritative; instead of being the end of a discussion, they should be the beginning of one. More importantly, it *289 is my view that the comments encourage such a discussion.
¶86 With that said, I would also submit that the Court’s characterization of comment e in ¶ 62 of the Opinion is not entirely accurate. The portion of the comments referred to by the Court reads in full as follows:
On the other hand, the place of performance can bear little weight in the choice of the applicable law when (1) at the time of contracting it is either uncertain or unknown, or when (2) performance by a party is to be divided more or less equally among two or more states with different local law rules on the particular issue.
Restatement (Second) of Conflict of Laws § 188 cmt. e (emphasis added).
¶87 I believe use of the word “can,” as opposed to “will” or “must” in the comment is significant. The word “can” simply connotes that prospect that the place of performance could be afforded little weight in certain circumstances, but not that it necessarily will. The language of the comment leaves open the question as to whether the place of performance should be accorded weight, but does not definitively and authoritatively provide an answer.
¶88 Accordingly, I believe that when we undertake an analysis of the “materially greater interest” inquiry in a manner consistent with the comments, we will conclude that while the place of performance factor can bear little weight, in this case it bears significant weight when considered in light of our “own legal principles” as the comments to the Restatement commend. In Montana, UIM coverage is considered to be portable and personal, and by definition “stackable”; thus under the legal principles set forth in the Montana Constitution, prohibitions on stacking violate Montana public policy. Hardy v. Progressive Specialty Ins. Co., 2003 MT 85, ¶ 45, 315 Mont. 107, ¶ 45, 67 P.3d 892, ¶ 45. The primary reason for this is because anti-stacking provisions violate the insured’s reasonable consumer expectations that she has actually purchased UIM coverage which she can use. At the time of the accident, Mamie was a named insured, attending the University of Montana, and protected under the laws of this state and the Montana Constitution. Assuming that she was lawfully covered by the UIM policy, Montana’s interest in protecting her reasonable consumer expectations if she was required to invoke UIM coverage in Montana was significant.
¶89 On the other hand, Ohio’s interest in this matter is limited to the general need to protect the justified expectations of Nationwide. *290 Ohayon, 747 N.E.2d at 212. The Restatement comments clearly recognize that this interest can yield. Thus, the question of whether Montana or Ohio has a “materially greater interest” in this dispute should be considered in the context of UIM coverage and in light of the policy questions invoked when states like Montana seek to prohibit the enforcement of anti-stacking provisions in UIM insurance contracts which are to be performed within its borders. This inquiry invariably requires a balancing of the interests embodied in the forum state’s policy, and the interests in protecting the justified expectations of the parties. As the comments to th e Restatement state, “[fulfillment of the parties’ expectations is not the only value in contract law; regard must also be had for state interests and for state regulation. The chosen law should not be applied without regard for the interests of the state which would be the state of the applicable law with respect to the particular issue involved in the absence of an effective choice by the parties.” Restatement (Second) of Conflict of Laws § 187 cmt. g (emphasis added). In this regard, I believe Justice Resnick correctly summarized some of these interests as follows:
Interstate travel by automobile is simply too foreseeable and too common a phenomenon to be ignored. Moreover, as evidenced by the extensive regulation in this area, an automobile insurance contract is for the benefit of the public as well as for the benefit of the named or additional insured. Thus, when the issue presented involves the validity or enforceability of a provision that purports to limit coverage, the interest of the state where damage occurred may, along with other factors, play a more significant role in choice of law than the parties’ presumed expectations ....
Ohayon, 747 N.E.2d at 223 (Resnick, J., dissenting).
¶90 Here, it must be borne in mind that the UIM coverage provision designated place of performance as anywhere within the area of coverage. The UIM coverage before us is considered portable under Montana law. Moreover, as the Court notes at ¶ 62, Nationwide even agreed that it would pay UIM damages according to “the tort law of the state where the motor vehicle accident occurred ....” In short, while Nationwide may not have expected the insurance contract to be interpreted according to Montana law, I would argue that at a minimum its justified expectations in this regard were not very strong. On the other hand, Mamie was living and working in Montana, paying taxes in Montana, and protected under the laws and Constitution of this state. I believe that under these circumstances Mamie deserved the protection of the laws of this State and that, consequently, *291 Montana’s interest is materially greater than Ohio’s, because anti-stacking provisions are against public policy here as a matter of constitutional principle. Assuming that the policy permitted Mamie to reside in Montana and still retain coverage, then Nationwide, with its national base of customers, should not automatically expect that its self-interest should trump Montana’s important public policy.
¶91 Thus, I would hold that Montana has a materially greater interest than Ohio, and proceed with further analysis of Modroo’s claims under Montana law. In my view, the mechanical application of the § 188(2) factors to determine whether one state has a “materially greater interest” overlooks the forest for the trees and is fundamentally at odds with the approach commended by the Restatement. While there will undoubtedly be areas where the laws and public policies of two states will not differ-and thus their material interests will be identical-that is not the case with respect to the issue before the Court now. By focusing only on the factors as if they were a part of a rote checklist, and not considering the policy concerns and questions which the factors are designed to explore, we misconstrue the meaning of the “materially greater interest” inquiry and arrive at a situation where Montana’s interest can be trumped by foreign insurers at the stroke of a pen. I do not believe that such an approach is consistent with the Restatement and “our own legal principles.” Therefore, I dissent.
JUSTICE NELSON joins in the Dissent of JUSTICE COTTER.